Hattie RAWLINGS and Edwin Lingsch, Jr., individually and on behalf of all others similarly situated, Plaintiffs-Appellees,

v.

Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant-Appellant.

No. 82-4545.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1983.

Decided Feb. 13, 1984.

Amended on Denial of Rehearing May 8, 1984.

Tricia Berke, Susan K. Jackson, Redwood City, Cal., for plaintiffs-appellees.

Joseph P. Russoniello, U.S. Atty., Barbara J. Parker, Asst. U.S. Atty., San Francisco, Cal., William Kanter, Carlene McIntyre, Dept. of Justice, Washington, D.C., for defendant-appellant.

* Honorable James Burns, United States District Judge for the District of Oregon, sitting by

Before TANG, and REINHARDT, Circuit Judges, and BURNS *, District Judge.

TANG, Circuit Judge.

This is an appeal from an order of the district court awarding attorneys' fees and expenses of $6,131.25 to plaintiffs under the Equal Access to Justice Act (EAJA), 28 U.S.C. 2412(d)(1)(A).

Plaintiffs, members of a class of Supplemental Security Income (SSI) recipients, sued the Secretary of Health and Human Services (Secretary), seeking statewide injunctive and declaratory relief. They sought to have the Secretary enjoined from offsetting underpayments of benefits due recipients but not timely paid to them against prior overpayments made to recipients. Plaintiffs also sought to compel the Secretary to provide notice and a hearing before such offsets were made.

The dispute arose when the Secretary withheld SSI payments from the two named plaintiffs, Rawlings and Lingsch. Each plaintiff had in previous quarters received SSI overpayments. In each case the previous overpayment was being deducted from monthly payments in amounts of $5 and $50 respectively. In February 1981, Rawlings became entitled to additional SSI benefits, which instead of being paid to her, were offset against her outstanding overpayment. Similarly, in February 1981 Lingsch became entitled to additional SSI benefits. When Lingsch failed to receive his February and March payments, he visited his local Social Security office and was told that his February and March benefits had been withheld because of the outstanding overpayments. Both Rawlings and Lingsch were told they had no right to appeal.

Plaintiffs filed this action April 7, 1981. The Secretary answered June 22, 1981, de-

designation.

nying most of plaintiffs' factual allegations and raising the defenses of lack of subject matter jurisdiction, failure to state a claim, and sovereign immunity. The parties entered a settlement agreement April 12, 1982, which provided substantially all of the relief requested by plaintiffs.

Upon motion by plaintiffs for attorneys fees, and after a hearing at which the Secretary opposed the motion, the district court awarded plaintiffs attorneys' fees of $6,131.25.

We decide the following issues:

1) Does the EAJA authorize attorneys' fees incurred before October 1, 1981, the effective date of the Act?

2) In determining whether the position of the United States was substantially justified, should the district court evaluate the pre-litigation Government actions giving rise to the suit, the government litigation position, or both?

 In reviewing a district court's decision to award attorneys' fees, we will reverse only if the court has abused its discretion. *Hoang Ha v. Schweiker,* 707 F.2d 1104, 1105 (9th Cir.1983). In determining whether the district court applied the correct legal standard in awarding fees, we review the court's decision *de novo. Foster v. Tourtellotte,* 704 F.2d 1109, 1111 (9th Cir.1983).

### A. *Fees Incurred Before October 1, 1981*

 A good deal of the work done on this case was performed before October 1, 1981, the effective date of the Act. The government concedes that the Act applies to this case, because the case was "pending" on October 1, 1981. The government argues, however, that if plaintiffs are entitled to any attorneys fees at all, only fees incurred after October 1, 1981 can be recovered from the government. The government also argues that the doctrine of sovereign immunity bars an award of fees that is not specifically provided by statute, citing 28 U.S.C. 2412(a).

The EAJA provides that:

[t]his title and the amendments made by this title shall take effect of [sic] October 1, 1981, and shall apply to ... any civil action ... described in section 2412 of title 28, United States Code, which is pending on, or commenced on or after, such date.

Public Law 96–481 § 208, 94 Stat. 2330 (1980).

We reject the government's arguments. We agree with those courts which have reasoned that the plain meaning of the statute allows for recovery of fees incurred prior to October 1, 1981, as long as the action was pending on that date. Had Congress intended no reimbursement for fees incurred prior to October 1, 1981, it could easily have so stated. *Tyler Business Services, Inc. v. N.L.R.B.,* 695 F.2d 73, 77 (4th Cir.1982).

The Supreme Court has approved awards of fees for work done before the effective date of similar statutes authorizing attorneys fees awards. *See Hutto v. Finney,* 437 U.S. 678, 694 n. 23, 98 S.Ct. 2565, 2575 n. 23, 57 L.Ed.2d 522 (Civil Rights Attorney's Fees Act); *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (Education Act Amendments of 1972); *see also Underwood v. Pierce,* 547 F.Supp. 256, 260–61 nn. 6 & 7 (1982).

The government argues that because these cases did not involve an award of fees against the government and therefore did not involve the problem of sovereign immunity, they are distinguishable. We disagree. In *Hill v. United States,* 571 F.2d 1098 (9th Cir.1978), we specifically relied on *Bradley* to address a question involving a retrospective waiver of sovereign immunity. Citing *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016, we stated that the Supreme Court has held that " 'a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary.' " 571 F.2d at 1102. We find no possibility of manifest injustice here, nor do we find a hint of legislative history to the contrary. We reject the government's attempted dis-

tinction of *Bradley* in this case. The district court's decision that attorneys fees may be awarded for work performed prior to October 1, 1981, where the case was pending on that date, is affirmed.

### B. *"Position" of the United States*

■ The EAJA provides, in relevant part: "[A] court shall award to a prevailing party other than the United States fee and other expenses . . . incurred by that party in any civil action brought by or against the United States . . . unless the court finds the position of the United States was substantially justified. . . ." 28 U.S.C. 2412(d)(1)(A). The parties disagree over the construction of the term "position" of the United States.

The Secretary argues that in determining whether the position of the United States was substantially justified, the government position to be scrutinized is that taken in the litigation itself. The Secretary urges that the government's litigation position was essentially one of accommodation to plaintiff's requested relief, and that the fee award should be reversed. Plaintiffs argue that the government position to be evaluated is the underlying government action giving rise to the litigation. The critical inquiry according to plaintiffs is whether there was a factual and legal justification for the underlying government action. Plaintiffs contend that the Secretary failed to carry its burden of establishing justification for either the underlying agency action or policy or the Secretary's delay in settling the case.

The district court below seemingly took a third approach. Although the court stated that the government's post litigation position was an inappropriate consideration, it held that "defendant's position prior to the litigation, or at the time of the litigation, was not justified. . . ."

The courts are divided over the proper definition of the term "position" of the United States. Some courts follow the "litigation position" theory, which examines the government's litigation posture. *See, e.g., Spencer v. N.L.R.B.,* 712 F.2d 539, 556

(D.C.Cir.1983); *Electronic Modules Corp. v. United States,* 702 F.2d 218, 219 (Fed.Cir. 1983). Other courts follow the "underlying action" theory, which focuses on the governmental action that precipitated the litigation, as well as, in most instances, on the government's litigation posture. *See, e.g., Natural Resources Defense Council, Inc. v. E.P.A.,* 703 F.2d 700, 708 (3d Cir.1983); *Tyler Business Services, Inc. v. N.L.R.B.,* 695 F.2d 73, 75–76 (4th Cir.1982). *See also Spencer,* 712 F.2d at 546 n. 28.

This Circuit has not issued a definitive ruling on the correct interpretation of "position." We have, however, shown a preference for the broader "underlying action" theory, which examines the totality of a situation. As we have stated previously: "For practical purposes, the distinction between defining 'position' as the litigation position or the underlying agency conduct makes little difference. Courtroom attempts to defend unreasonable agency actions usually will be unreasonable also." *Hoang Ha,* 707 F.2d at 1106.

Several courts have found, often after painstaking review, that the EAJA's legislative history is inconclusive on the construction of the term "position." *See, e.g., Spencer,* 712 F.2d at 547–49; *Citizen Coalition for Block Grant Compliance v. City of Euclid,* 537 F.Supp. 422, 426 (N.D.Ohio 1982). We arrive at the same conclusion. The legislative history shows that the term "position of the United States" was employed at times to refer to the underlying actions of an agency, and at other times to the litigation position of the government. *Compare* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10 (1980) *and* S.Rep. No. 253, 96th Cong. 1st Sess. 6, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4989 *with* H.R. No. 1418, 96th Cong., 2d Sess. 11 (1980) *and* S.Rep. No. 253, 96th Cong., 1st Sess. 6, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4953, 4989.

The "uncertainty" of the legislative history supports the view that Congress intended to include both the underlying action and the government's litigation posture within the term position. *See Environmental De-*

*fense Fund, Inc. v. Watt,* 554 F.Supp. 36, 41 (E.D.N.Y.1982). "If the government's litigation position was the sole consideration, then the government could insulate itself from any liability for attorneys' fees, no matter how unreasonable the action challenged, simply by conceding error or settling on reasonable terms after a suit has been filed." *Id.* We do not believe that Congress intended the courts to adopt this myopic view. It is our opinion that the remedial purpose of the EAJA is best served by considering the totality of the circumstances prelitigation and during trial. *Cf. McQuiston v. Marsh,* 707 F.2d 1082, 1086 (9th Cir.1983) ("bad faith" for purposes of attorney's fees award can be found either in the underlying action or in the litigation conduct).

## C. *Substantially Justified*

██ As the district court's order is consistent with our holding in this case, it remains for us to determine whether the trial court abused its discretion in finding that the government's position was not substantially justified. *Hoang Ha,* 707 F.2d at 1105. The standard to be applied in determining whether the government's position was substantially justified is one of "reasonableness." *Foster v. Tourtellotte,* 704 F.2d at 1112. If the government can show " 'that its case had a reasonable basis both in law and in fact, no award will be made....' " *Id.* (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4989–90.).

██ The government has failed to present this court or the court below with a reason why the challenged policy of the Social Security Administration had a reasonable basis. Moreover, the government has failed to demonstrate why its litigation posture was reasonable, other than to point to its allegedly "conciliatory" litigation demeanor.

The factual record belies the government's contention. It was not until the filing of the present action and the filing of a preliminary injunction motion that an ef-

fort was made to provide plaintiffs with the retrospective relief sought. Although the lawsuit was filed in April, 1981, it was not until a year later, in April 1982, that the government settled. In that time period, an answer was filed denying plaintiffs' allegations and the discovery process was commenced.

The government concedes that it "never said that the plaintiff's position was not a tenable one...." The settlement terms reflect this statement and support plaintiff's argument that the government's position was not substantially justified.

In view of the above factors, we cannot say that the district court abused its discretion in awarding the modest amount of attorney's fees requested by plaintiffs' counsel. We do not, however, award fees on appeal. The standard of review is again one of reasonableness. *Foster,* 704 F.2d at 1112; *Electronic Modules,* 702 F.2d at 219–20. The government's appeal to this court was reasonable both on the question of the retroactive effect of the EAJA and the proper definition of the term "position of the United States." Those issues were unsettled in this Circuit and the government was substantially justified in raising them.

AFFIRMED.

JAMES M. BURNS, Chief Judge, Sitting by Designation, specially concurring in part and dissenting in part:

I concur, in the main, in Judge Tang's opinion as indicated herein. I write separately to call attention to the problems created by the increasing time spent litigating attorney's fee issues. I see it increasingly in my ordinary work, i.e., on the trial court. Indeed, I recently indulged in an inelegant figure of speech in a case before me, *Stanwood v. Green,* 559 F.Supp. 196 at 202 (D.Or.1983) in which it seemed as if attorneys spent almost as much time litigating the attorney's fee issue as they spent litigating the merits (actually it was a consent decree case). There I expressed the belief that "[T]he 'attorney's fee' tail must not be allowed to wag the 'merits' dog."

In part, an inordinate amount of time is devoted to the fee award because trial courts are required to "climb the twelve rungs of *Kerr*" in virtually all types of cases. *Kerr v. Screen Extras Guild,* 526 F.2d 67, 69 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). I question the need for the *Kerr* factor exercise in EAJA cases and in cases such as this where only a "modest" $6,000 is at stake. See also, *Bertrand v. United States,* 562 F.Supp. 222, at 225 (D.Or.1983) (Redden, J.) wherein Judge Redden concluded that *Kerr* "seem[ed] to require [him] to climb the twelve rungs of *Kerr,* or be found to have abused my already weary discretion."

I also see government attorneys[1] who waste public money by unnecessary and unjustified briefing and argument over points they must know will be unsuccessful. In this case, for example, I would be inclined to award fees to the appellees for that part of their time involved in resisting the Secretary's claim that fees are not available for work done before October 1, 1981. In view of *Bradley v. School Board, etc.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) and our own case of *Hill v. United States,* 571 F.2d 1098 (9th Cir.1978), it makes one shake his head at the intransigence of government lawyers. Since my colleagues on the panel do not agree with me, I dissent only to the extent indicated.

---

**1.** Frequently those who litigate in Social Security cases. The Secretary's (that is, her lawyer's) intransigence has been noted by other decisions, e.g., *Lopez v. Heckler,* 572 F.Supp. 26 (C.D.Cal.1983), *partial stay denied,* 713 F.2d 1432 (9th Cir.1983), *stay granted,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) (Rehnquist, Circuit Justice); *Leschniok v. Heckler,* 713 F.2d 520 (9th Cir.1983).