**TRIDENT MARINE CONSTRUCTION, INC., Plaintiff-Appellant,**

v.

**DISTRICT ENGINEER, the UNITED STATES ARMY CORPS of ENGINEERS, DETROIT DISTRICT; Col. Raymond Beurket, Jr., Contracting Officer; Richard Durkin, Regional Administrator; United States Small Business Administration, Chicago Region, Defendants-Appellees.**

No. 84–1491.

United States Court of Appeals, Sixth Circuit.

Argued May 1, 1985.

Decided July 9, 1985.

Rehearing and Rehearing En Banc Denied Aug. 26, 1985.

Todd R. Dickinson, Tolley, Fisher and Verwys, Mark Verwys (argued), Grand Rapids, Mich., for plaintiff-appellant.

John A. Smietanka, U.S. Atty., Carol A. Husum, Asst. U.S. Atty., Thomas J. Gezon (argued), Grand Rapids, Mich., for defendants-appellees.

Before ENGEL and MARTIN, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Trident Marine Construction, Inc. appeals an order of the district court denying it attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).[1] The district court found that the government's position in the underlying litigation was substantially justified and that attorneys' fees were therefore not permissible under the Act. 587 F.Supp. 799. We affirm.

## I.

The underlying action in this case involves the awarding of a government contract by the United States Army Corps of Engineers for the repair of the south

---

* Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. Pursuant to a sunset provision in the Equal Access to Justice Act, 28 U.S.C. § 2412(d) was automatically repealed as of October 1, 1984. Pub.L. No. 96–481, § 204(c), 94 Stat. 2321, 2329 (1980). The Act is still applicable, however, to all cases that were pending as of that date. *Id.* This case would fall in that category.

breakwater in Muskegon Harbor. In the summer of 1983, the government decided that submission of bids on the contract was to be limited to small businesses as defined in the Small Business Act, 15 U.S.C. § 632. On July 14, 1983, Canonie Construction Company formally protested the decision to set aside the contract for small business. This protest delayed the opening of bids on the project until August 23, 1983. This was a setback to the Corp of Engineers because the contract had to be awarded by September 30, 1983 or the funding would be lost to another project.

On August 23, however, the bid opening was conducted subject to Canonie's protest. Trident Marine Construction, Inc. was low bidder by over $100,000. Zenith Dredging Company was the second lowest bidder. When Canonie found out that Trident was the low bidder, it dropped its protest on September 6, 1983.

On August 30, 1983, Zenith wrote a two-sentence letter to the Corps of Engineers protesting Trident's small business status. At the same time, the Corps of Engineers was preparing its own protest to Trident's small business status. Both of these protests were forwarded to Small Business Administration for review. In its letter to the SBA, the Corps explained that its protest was prompted by several allegations from marine contractors that Trident was affiliated with Canonie and because Trident's and Canonie's management were closely intertwined. The Corps also expressed the concern that the telephone number Trident listed on its bid actually was listed in the name of Canonie.

John Noeth, an industrial specialist for the SBA, received Zenith's and the Corps' protests and initiated the SBA's review. Pursuant to 13 C.F.R. § 121.3–5(b) (1984), Noeth was required to send a copy of both protests to Trident. Although Noeth testified that he gave both protests to his secretary to mail to Trident, the district court found as a matter of fact that Trident only received a copy of Zenith's protest.

In any case, Noeth notified Trident of the SBA's investigation by certified letter, which arrived at Trident's post office box on September 3, 1983. Because James Collins, Trident's sole employee and president, was in Oregon attending to business for Canonie, Trident did not pick up the letter until September 14, 1983. On that day, William Kokal, a subcontract specialist for the SBA who worked with Noeth, reached Collins by phone and informed him that a protest letter had been sent. Collins' wife picked up the protest letter that day.

Once Trident had received the protest letter, it had three working days to respond. 13 C.F.R. § 121.3–5(b) (1984). In this case, Trident's response was due by the close of the working day on September 19. To respond to the protest, Trident had to send a completed SBA Form 355, which Trident received along with the protest notification, and other documentation. *Id.* If Trident did not respond within the three-day period, the SBA would rule that Trident was not a small business, unless the SBA granted Trident an extension within which to file. *Id.*

Over the next few days, Collins accumulated the necessary information to respond to the protest. On the morning of September 19, Collins spoke with Kokal by phone and told him that Trident's response was being sent to the SBA by Federal Express that morning.[2] Kokal did not object to this mailing, but he also did not grant Trident an extension. Later that day, Colonel Raymond Beurket, the contracting officer for the Corps, called Kokal and inquired into the status of the SBA's determination on Trident. Inexplicably, Kokal did not tell Colonel Beurket that Collins had sent the materials that morning, but instead simply stated that the SBA had not yet received any materials from Trident. Colonel Beurket interpreted Kokal's statement as a disqualification of Trident and at 2:00 p.m. he awarded the contract to Zenith.

---

**2.** Collins was not able to speak that day with Noeth, who was in charge of the SBA's determination, because he was not at work due to illness.

Within half an hour, Collins heard that the contract had been awarded to Zenith. Collins quickly called Kokal to find out what had happened, and Kokal claimed that he had not even talked with Colonel Beurket. Kokal reminded Collins, however, that Trident's response was due at the end of the day, and Collins immediately asked for an extension. Collins formalized the request for an extension by sending a telegram to that effect. Kokal testified that Trident's request for an extension was denied but that he was unable to reach Collins that day to inform him of that decision.

Over the next few days, Trident sought to convince the SBA and the Corps to rescind the award of the contract to Zenith. The SBA decided, however, to stand by its determination that Trident was disqualified because it had not responded to the protest within the requisite three-day period. On September 23, 1983, Trident filed suit in federal district court seeking to enjoin the award of the contract to Zenith and asking for declaratory relief. After three days of hearings, the district court, on September 29, 1983, granted Trident the relief it sought.

The district court found that Trident was entitled to relief for two reasons. First, the court found that Zenith's protest was legally insufficient under the SBA's regulations, 13 C.F.R. § 121.3–5(a) (1984). Because Zenith's protest was insufficient and because Trident never received the Corps' protest, the court concluded that there was not an effective protest to which Trident had to respond. Second, the court held that the Corps was estopped from awarding the contract to Zenith because it had agreed not to award the contract until it had received the SBA's determination. Although this holding was not particularly clear from the court's bench ruling on September 29, the district court explicitly stated in its opinion rejecting appellant's request for attorneys' fees that it had relied on estoppel as well as the insufficiency of the protest letter in ruling for Trident.

After obtaining the relief it sought, Trident sought reimbursement for its attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). That section states in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The district court denied Trident's request for attorneys' fee, finding that the government's litigating position was substantially justified.

## II.

Trident challenges the district court's holding on two grounds. First, it claims the district court erred in holding that it would examine the government's litigating position and not the underlying agency position in determining whether the government's position was substantially justified. Second, Trident claims that even if the government's litigating position is examined, that position was not substantially justified. We will discuss these arguments in turn.

## A.

The question of whether the "position of the United States" in the Equal Access to Justice Act is intended to refer to the government's litigating position or the underlying agency position is an issue that has been considered by nine circuit courts. A majority of the circuits have concluded that the government's "position" refers only to its litigating position. *Ashburn v. United States*, 740 F.2d 843, 849 (11th Cir. 1984); *Boudin v. Thomas*, 732 F.2d 1107, 1116 (2d Cir.1984); *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1487

(10th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984); *Spencer v. NLRB,* 712 F.2d 539, 557 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984); *Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 75 (4th Cir.1982); *Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387, 1390–91 (Fed.Cir.1982). The Third Circuit, however, has concluded that only the underlying agency position should be considered. *National Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* 703 F.2d 700, 707 (3d Cir. 1983). The Eighth and Ninth Circuits have chosen a hybrid approach by considering both the underlying agency position and the government's litigating position. *Iowa Express Distribution, Inc. v. NLRB,* 739 F.2d 1305, 1309 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 595, 83 L.Ed.2d 704 (1984); *Rawlings v. Heckler,* 725 F.2d 1192, 1196 (9th Cir.1984). This is an issue of first impression in this circuit.[3] *See Sigmon Fuel Co. v. Tennessee Valley Authority,* 754 F.2d 162, 166 n. 5 (6th Cir. 1985).

In determining whether the term "position" refers to the government's litigating position or the underlying agency position, we obviously should first turn to the language of the statute and the legislative history behind the statute. We find, however, as have most of the other circuit courts that have considered the question, that the statutory language and legislative history are inconclusive on this issue.[4] *Ashburn v. United States,* 740 F.2d at 847–49; *Iowa Express Distribution, Inc. v. NLRB,* 739 F.2d at 1309; *Boudin v. Thomas,* 732 F.2d at 1115; *Rawlings v. Heckler,* 725 F.2d at 1195; *Spencer v. NLRB,* 712 F.2d at 549; *National Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* 703 F.2d at 717, 718 (Hunter, J., dissenting). Because the arguments based on statutory construction and legislative history have been thoughtfully explored in these other circuit court opinions, we shall not rehash those arguments here.

Because we do not find clear instruction from the Act itself or its legislative history, we must look to the general policy behind the Act in giving meaning to its terms. As several other courts have stated, the Equal Access to Justice Act was designed "to encourage private parties, who might be deterred by the expense of litigation, to challenge unreasonable governmental behavior." *Ashburn v. United States,* 740 F.2d at 849. At the same time, however, Congress did not want to inhibit the

---

**3.** We note, as have many other courts that have considered the issue, *see Spencer v. NLRB,* 712 F.2d at 551, that in most cases the government's litigating position and the agency's position will be one and the same. Usually the government will simply try to defend the agency's action in litigation. In this case, however, the distinction between the litigating position and agency position is important for two reasons. First, the district court stated that it had reviewed the agency's action under the "arbitrary and capricious" standard of 5 U.S.C. § 706. As we will discuss, *see infra* p. 979, the standard of review could cause a different result in attorneys' fees cases depending on whether the litigating position view or agency position view is used. Second, certain facts were apparently known at the agency level that were not known by the government's counsel in litigation. *See infra* p. 981. For this reason, we also must determine which interpretation is correct.

**4.** Trident argues that even if legislative intent as to the meaning of "position" was unclear when the statute was passed, congressional intent has been clarified by the passage of a bill that reenacted the EAJA. H.R. 5479, 98th Cong.2d Sess., 130 Cong.Rec. 14,387–88 (1984). In that bill, Congress amended the EAJA to define the "position of the United States" to include the underlying agency position. This bill was subsequently pocket vetoed by the President. *Taylor v. United States,* 749 F.2d 171, 174 (3d Cir.1984). Although we recognize that the intent of later Congresses has "persuasive value," *Bell v. New Jersey,* 461 U.S. 773, 103 S.Ct. 2187, 2194, 76 L.Ed.2d 312 (1983), this Court has recently stated that it is "well settled that the views of subsequent congressional sessions are not reflective of the appropriate interpretation of statutes enacted by an earlier assembly of law makers." *Davis v. Devine,* 736 F.2d 1108, 1113 (6th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 436, 83 L.Ed.2d 362 (1984). Given our conclusion, *see infra* p. 10, that the litigating position view is much more in conformity with the original purposes of the Act, we do not find a later Congress's efforts to amend the EAJA persuasive enough to dissuade us that the litigating position view is the correct approach.

government's efforts to enforce the law nor burden the government with the cost of an automatic fee-shifting provision. *Id. See also Spencer v. NLRB*, 712 F.2d at 549–51. In an effort to balance these concerns, Congress required a showing that the government's position was not substantially justified before fees will be awarded. The question thus becomes whether the litigating position view or agency position view best implements this compromise.

Those courts that have concluded that the litigating position view best implements congressional policy have relied primarily on one argument.[5] *Ashburn v. United States*, 740 F.2d at 849; *Boudin v. Thomas*, 732 F.2d at 1115–16; *Spencer v. NLRB*, 712 F.2d at 552–53. *See also National Resources Defense Council, Inc. v. U.S. Environmental Protection Agency*, 703 F.2d at 717, 717–19 (Hunter, J., dissenting). That argument is that the agency position view could result in automatic fee-shifting in many cases, which is what Congress was trying to avoid. Such automatic fee-shifting would result because the federal courts often review agency action to determine whether it is arbitrary or capricious or was not supported by substantial evidence. *See* 5 U.S.C. § 706. "After [a] court [has] concluded that the agency's action was arbitrary and capricious, and the prevailing party asked for attorney's fees, it would be hard for the court to then rule that the agency's action was nevertheless 'substantially justified.'" *Ashburn v. United States*, 740 F.2d at 849.[6] Based primarily on this concern, several circuits have adopted the litigating position approach to avoid such automatic fee shifting.

Those courts that have rejected the litigating position approach have similarly relied primarily on one policy reason. Those courts have stated that "[i]f we were to limit our consideration of the government's position to merely the stance taken in litigation, no matter how outrageous the underlying governmental action, the government would be absolved from liability if Justice Department litigators acted reasonably." *Iowa Express Distribution, Inc. v. NLRB*, 739 F.2d at 1309. *See also Rawlings v. Heckler*, 725 F.2d at 1196; *Natural Resources Defense Council v. U.S. Environmental Protection Agency*, 703 F.2d at 707. Moved by this concern, these courts have found that the underlying agency position must be considered to further the purposes of the Act.

■ We find that on balance, the rationale supporting the litigating position approach is the stronger view. We believe that there is a legitimate concern that the agency position view could result in automatic fee-shifting, which would clearly contravene congressional intent. At the same time, we do not find the concern expressed by those circuits which have adopted the agency position approach to be convincing. If the government's counsel is able to make reasonable arguments based on the law and facts of the case in court, the agency's decision could not have been that outrageous in the first place. Although the agency may have articulated some outrageous justification for its action at the time it was taken, if the government did in fact have an unarticulated but reasonable justification for its action, we would want the government to pursue that justification in court. We therefore conclude that the

---

**5.** Although most courts that have adopted the litigating position view have relied primarily on the argument discussed in the text, the court in *Spencer v. NLRB*, 712 F.2d at 552–56, outlined several other cases where the litigating position view would comport better with the purposes of the EAJA than the agency position view. Although we do not discuss these other rationales in the text, we do note that we find the *Spencer* court's reasoning to be convincing and to add further support to our conclusion.

**6.** This concern clearly influenced the district court in its adoption of the litigating position approach in this case. Having apparently found that the SBA's interpretation of its own regulation was arbitrary and capricious, the district court felt it could not find that the agency's action as "substantially justified." The court, however, did find that the government was substantially justified in litigating whether the agency's action was, in fact, arbitrary and capricious.

policy concerns weigh heavily on the side of the litigating position view, and we therefore adopt that view for this circuit.[7]

**B.**

■ Having determined that we will examine the government's litigating position, we must now review the district court's conclusion that that position was substantially justified. Whether or not the government's position is substantially justified is basically a question of reasonableness. *Wyandotte Savings Bank v. NLRB*, 682 F.2d 119, 120 (6th Cir.1982). "The government must therefore show that there is a reasonable basis in truth for the facts alleged in the pleadings; that there exists a reasonable basis in law for the theory it propounds; and that the facts alleged will reasonably support the legal theory advanced." *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d at 1487.

■ We review under an abuse of discretion standard the district court's ruling that the government's position was substantially justified. *Westerman, Inc. v. NLRB*, 749 F.2d 14, 17 (6th Cir.1984). "In this context, however, the term 'abuse of discretion' takes on a special meaning. With respect to findings based upon the district judge's assessment of the probative value of the evidence, a highly deferential standard of review such as the clearly erroneous standard is in order. With respect to the district court's evaluation of the government's legal argument, a *de novo*

standard is appropriate." *Sigmon Fuel Co. v. Tennessee Valley Authority*, 754 F.2d at 167 (citations omitted).

As was stated above, the district court found two flaws in the government's litigating position. First, the court found that Zenith's protest letter was not effective under the SBA's regulation, so there was no valid protest to which Trident had to respond.[8] Second, the court found that the Corps was estopped from awarding the contract until the SBA had made a determination as to Trident's size. If the government was reasonable in contesting these conclusions, then attorneys' fees should not have been allowed.

The district court's first holding was based on the following provision in the SBA's regulations:

A protest must adequately set forth specific alleged grounds for the protest. A protest merely alleging that the protested concern is not small or is affiliated with unspecified other concerns will not be deemed to adequately specify grounds for the protest. Evidence supporting the protest may be submitted therewith. Protests which do not set forth specific alleged grounds for the protest will be dismissed.

13 C.F.R. § 121.3–5(a) (1984). Noeth, who handled size determinations for the SBA, found that Zenith's protest was sufficient for purposes of the regulation. The dis-

---

**7.** One of the strongest criticisms of the litigation position approach is that under that approach, a litigant could never recover attorneys' fees against the government when the government settled the suit prior to trial. *See* Note, *The Equal Access to Justice Act in the Federal Courts*, 84 Colum.L.Rev. 1089, 1114 (1984). According to this argument, settlement by the government will always be deemed reasonable by the courts, and the government thus will avoid paying attorneys' fees.

Although we agree that a litigant should be able to recover attorneys' fees against the government in certain cases when it forces the government to settle a claim, *see Kreimes v. Department of Treasury*, 764 F.2d 1186, 1190 (6th Cir.1985); *Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid*, 717 F.2d 964, 966 (6th Cir.1983), we do not believe

that our adoption of the litigation approach precludes such a recovery. When a district court considers an Equal Access to Justice Act fee request after the government has settled a case, the district court should examine the government's position if it had been forced to go to trial. If that position is untenable, the opposing litigant should be able to recover attorneys' fees.

**8.** The district court apparently found that SBA's interpretation was "arbitrary and capricious" under 5 U.S.C. § 706(2)(A). We are unsure whether the SBA's action, if it in fact was improper, was "arbitrary and capricious" or just "otherwise not in accordance with law" *Id.* Obviously, no matter which ground is relied upon, the result is the same.

trict court found as a matter of law that Zenith's letter was an insufficient protest.[9]

■ At trial, the government argued that SBA's interpretation of its own regulation was entitled to deference and that the court should not substitute its judgment on the sufficiency of the protest for the SBA's judgment. Although the district court did not accept the government's claim, we agree with the district court that this is a substantial argument to justify the government's position. The law is well settled that the federal courts should accord great deference to an agency's interpretation of its own regulations. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964); *Housing Authority of Elliott County v. Bergland*, 749 F.2d 1184, 1189 (6th Cir.1984). Based on this precedent, the government had a strong argument that Zenith's protest was sufficient.

■ Trident contends that even if the government had a substantial justification to argue that Zenith's letter was sufficient, the government's argument was irrelevant because Zenith withdrew its protest on September 15, five days before the contract was awarded.[10] We do not find Trident's argument to be convincing for three reasons. First, Zenith's withdrawal of its protest was not known to either side during trial. Counsel for the government apparently only became aware of this fact sometime after the district court's decision. Thus, this fact was not known to the government as it formulated its litigating position. Because we have already held that we shall only consider the government's litigating position, Zenith's withdrawal of its protest is irrelevant.

Second, even if the government had been aware that Zenith withdrew its protest, the government still had a reasonable basis in fact to argue that the Corps' protest was valid. Noeth testified that he had given the Corps' protest letter to his secretary to mail. Although the district court ultimate-

ly found that the Corps' protest was not sent, we believe that Noeth's testimony was a reasonable factual basis on which to argue that the Corps' protest had been sent to Trident and was valid.

Finally, even though Zenith withdrew its protest, the SBA had the power to complete its determination. 13 C.F.R. § 121.3–4(b) (1984). The government therefore had a strong legal basis to argue that Zenith's withdrawal of its protest was immaterial with respect to Trident's duty to answer the protest.

■ We also believe that the government had a substantial legal basis to contest the district court's determination that the Corps was estopped from awarding the contract to Zenith until the SBA made a size determination. In support of its ruling that the Corps was estopped from awarding the contract, the district court relied on the following regulation:

If the SBA District Director's determination is not received by the contracting officer 10 working days after SBA's initial receipt of a protest or notice questioning the Small Business status of a bidder or offeror, it shall be presumed that the questioned bidder or offeror is a small business concern. This presumption will not be used as a basis for making an award to the questioned bidder or offeror without first ascertaining when a size determination can be expected from SBA, and where practicable, waiting for such determination, unless further delay in award would be disadvantageous to the Government.

32 C.F.R. § 1–703(b)(3)(i) (1984). The district court was apparently of the view that because the Corps had decided to wait for a size determination from the SBA in this case, it was estopped from awarding the

---

9. Because this was a legal determination, the standard of review on appeal is *de novo*. *Sigmon Fuel Co. v. Tennessee Valley Authority*, 754 F.2d at 167.

10. Apparently, a representative of the Corps had asked Zenith to withdraw its protest so that the contract could be awarded without delay.

contract without first getting that size determination.[11]

The evocation of estoppel against the government presents significant and difficult legal and factual issues. The Supreme Court has left open the issue of whether the government can ever be estopped, *Heckler v. Community Health Services,* — U.S. ——, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984), and this Court has recently stated that "[e]quitable estoppel generally is not available against the government." *Housing Authority of Elliott County v. Bergland,* 749 F.2d at 1190. Given the great disfavor with which estoppel against the government is viewed in federal court, we believe the government had a substantial legal basis to argue that it was not estopped from awarding the contract to Zenith in this case.[12]

Because we conclude that the district court correctly found that the government had a substantial justification for its position, we affirm its denial of attorneys' fees under the Equal Access to Justice Act.

**11.** Because the question of whether the government can be estopped is a legal one, *de novo* review is again the appropriate standard. *See supra* note 9.

**12.** Not only is the legal question of whether the government can be estopped a substantial one, there are also substantial factual issues in an estoppel case. *See Heckler v. Community Health Services,* 104 S.Ct. at 2223–24. Although the district court did not make any findings in this regard, we think there were substantial factual issues as to whether the Corp had made any misrepresentation of fact upon which Trident reasonably relied.