DAVID J. POWELL AND ESTATE OF JEANE D. POWELL, DECEASED, DAVID J. POWELL, EXECUTOR, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4565-83.        Filed September 26, 1988.

*Claude R. Wilson, Jr.,* and *William S. Lee,* for the petitioners.

*David A. Hampel,* for the respondent.

OPINION

SCOTT, *Judge:* This case was assigned to Special Trial Judge Marvin F. Peterson pursuant to section 7456(d), I.R.C. 1954[1] (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat.

---

[1] All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated.

2755), and Rules 180, 181, and 183.[2] The Court agrees with and adopts his opinion which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

PETERSON, *Special Trial Judge:* On January 14, 1985, the Court issued its opinion in *Powell v. Commissioner,* T.C. Memo. 1985-27, in which we denied petitioners' motion for award of litigation costs. On August 18, 1986, the U.S. Court of Appeals for the Fifth Circuit reversed the Tax Court and remanded the case for further proceedings in accordance with their opinion of June 11, 1986.

In the prior opinion of this Court, we concluded that petitioners were not entitled to an award of litigation costs on the ground that petitioners failed to allege that respondent's position in the action after the filing of the petition was unreasonable. We determined that petitioners failed to show that respondent's position during the proceeding was unreasonable because the facts relied on by petitioners referred to actions taken by respondent prior to filing of the petition. We held that in order for a taxpayer to recover litigation costs under section 7430, he must establish that he was a prevailing party under section 7430(c)(2)(A)(i) by showing "that the Commissioner's position *after the petition was filed* was unreasonable." (Emphasis supplied.) Further, we held that "we must 'test the reasonableness of respondent's position during the litigation from the time of the filing of the petition,'" citing *Baker v. Commissioner,* 83 T.C. 822, 827 (1984), affd. on this issue, but remanded on other grounds 787 F.2d 637 (D.C. Cir. 1986). *Powell v. Commissioner, supra.*

The Court of Appeals rejected our interpretation of the statute and determined that we should have considered the reasonableness of the administrative position of the Internal Revenue Service which necessitated the instigation of the litigation in this Court and not just the reasonableness of its position after the litigation had begun. The Court of Appeals concluded that section 7430 allows tax litigants to recover the costs of a civil proceeding they never should have been required to initiate. *Powell v. Commissioner,* 791

---

[2]All Rule references are to the Tax Court Rules of Practice and Procedure.

F.2d 385, 392 (5th Cir. 1986). Therefore, we must decide whether respondent's position was reasonable at the time the petition was filed in this case.

## Factual Background

The issue in this case revolves around petitioners' 1976 and 1977 income tax returns. During 1976, petitioners claimed a deduction in the amount of $25,034 for an investment in WPMGA Joint Venture, a limited partnership. Petitioners purchased a one-sixth interest in WPMGA for $26,000. Petitioners paid $5,000 in cash and signed a nonrecourse promissory note for $21,000. WPMGA, in turn, invested $156,000 in INAS Associates, L.P., a partnership which had acquired certain coal leases for a cash payment of $30,000 and a nonrecourse promissory note for $126,000 at 7 percent per annum and due in 30 years.

In his notice of deficiency, dated March 21, 1980, respondent determined that the loss was not deductible primarily on the ground that there was no good-faith objective of profit from the coal mining venture. In essence, respondent determined that the transaction was a sham. The notice of deficiency was issued before the audit of the partnership was completed because the parties failed to extend the statute of limitations. Petitioners did not file a petition in this Court because of an understanding with respondent that collection of the assessed income tax would be held in abeyance pending the completion of the audit of the partnership.

The audit report for the 1976 partnership year was issued on February 28, 1979, in which it was determined that the losses claimed from the mining venture were not deductible since the partnership was organized for the sole purpose of avoiding income taxes. In addition, the audit report for the 1977 partnership year was issued on April 30, 1981, in which it was determined, in part, that the partners received taxable income from the discharge of the nonrecourse note which was used in part as payment for the partnership interest. Respondent reasoned that since the nonrecourse note was to be repaid from the production of coal, and the evidence showed there was no possible coal production, the note would have to be forgiven by the lessor.

On January 18, 1982, respondent issued a 30-day letter to petitioners for the year 1977 setting forth the partnership adjustments. On August 2, 1982, respondent offered to settle as to the 1976 tax year by allowing a deduction of $5,000 for the out-of-pocket cash investment, and to settle as to 1977 on the basis that there would be no gain or loss with regard to the partnership adjustments. Petitioners rejected the offer.

A statutory notice of deficiency was issued on January 24, 1983, in which respondent determined that petitioners received income from the discharge of the partnership nonrecourse promissory note in the amount of $20,998.57 and that the partnership loss in the amount of $896.13 was not allowable. On October 11, 1983, respondent renewed the August 2, 1982, settlement offer. In accordance with the offer, petitioners were allowed a deduction of $5,000 in 1976 for the cash paid; and for 1977, there was no income or loss as a result of the partnership activity.

On July 30, 1984, petitioners filed a motion for litigation costs which was denied on January 16, 1985.

## OPINION

Based on the remand from the Court of Appeals, we must decide whether respondent's position which caused the litigation in this Court was unreasonable. To make this decision, we must look to respondent's position in the notice of deficiency since the issuance of the notice of deficiency caused petitioners to commence their litigation.

For the year 1977, respondent determined that petitioners received income from the discharge of indebtedness. When the parties settled this case, respondent conceded this issue. Therefore, the question is whether respondent's determination as to this adjustment was unreasonable.

Respondent argues that his determination for 1977 was necessary to protect the revenue since this adjustment is related to respondent's determination for 1976.

Respondent audited the INAS partnership for 1976 to determine whether or not petitioners were entitled to a deduction claimed for payment of an advanced royalty which caused INAS to report a loss for 1976. Respondent disallowed the loss primarily on the ground that the coal

venture was a sham. Petitioners did not file a petition in this Court since the partnership audit had not been completed. The parties had an understanding that no action on collecting the assessment for 1976 would be made pending the completion of the partnership audit for the years 1976 and 1977. Subsequently, the audit was completed in which respondent determined that the partnership was a sham, and the 1976 loss was denied. For the year 1977, respondent included in partnership income the amount of the nonrecourse note since he was of the opinion that the note would not be paid. Although no deduction was allowed for the nonrecourse note during 1976, which was a part of the advance royalty payment, respondent concluded that a court might find that the 1976 partnership loss was deductible in full, and it was necessary to take this position to protect the revenue. Respondent concluded that the partnership realized income from the discharge of indebtedness because the nonrecourse note was only payable from coal production, and it was clear that the property had no potential income when the partnership's application for Federal coal leases was denied in 1977.

Respondent applies his supposition to petitioners' case by arguing that petitioners could have successfully litigated their case for 1976 in a Federal District Court or the U.S. Claims Court; and further, that since there would be no coal production, the nonrecourse note would have to be forgiven by INAS thereby causing income to the partners.

We find respondent's reasoning faulty. First, if a court were to determine that the investment in the partnership had economic substance because there was coal to mine, the note would not have been forgiven in 1977 since the note was to be paid from the coal production and, as such, would have value. Second, even assuming, arguendo, that the note would not be paid from the income from the property, respondent arbitrarily assumed the note would be forgiven in 1977. Clearly, if there was coal to produce in 1976, there would have been coal to produce in 1977, and the note would not have been forgiven. Respondent based his determination that the nonrecourse note would be "uncollectible and obviously forgiven by the lessor" solely on the fact that the Federal Bureau of Land Management did not approve

the partnership's application for a coal lease which became final on May 4, 1977. This conclusion is in error since it is evident by respondent's engineering report that it was highly unlikely in 1976, when the leases were obtained, that the leases would be approved for coal production, and, if approved, would produce only minimal coal. Further, it is pointed out that respondent, in the INAS partnership audit report for 1976, determined that the nonrecourse note was "so speculative as to create a contingent liability" and disallowed the interest deduction claimed on the notes.

Respondent comes to the same conclusion in the partnership audit report for 1977, when in referring to the audit report for 1976, he states "it was determined that this note was not a valid indebtedness since it was without liability (nonrecourse to the partnership or the individual partners), and its repayment was contingent upon the production of coal, which was impossible."

The record is clear that after the audit was completed, it could only be concluded that the partnership never did have viable coal leases, but was formed solely to obtain tax deductions. It is also clear that the purchase price of the leases was far in excess of the value of any potential coal reserves. Although respondent argues that it was necessary to take an alternative position in this case because there was substantial risk that a court would find that the partnership had economic substance, the partnership audit report belies this assertion as follows:

> In this case when one views the whole transaction from beginning to end it can easily be seen that this is a gigantic, nation-wide sale of 1976 tax deductions under the guise of a coal tax shelter, in which the sale proceeds were converted to personal use by the promoters. The transaction can be broken down into 4 basic stages: lease acquisition, the step up process, the formation and syndication stage, and the flow of funds. Within each of these stages are telltale signs that the whole transaction was a preconceived plan to extract cash from investors in return for promises of large tax losses.

In addition, respondent's engineering and valuation report, made after a review of the coal property and leases, concluded "The INAS partnership was organized for the sole purpose of avoiding payment of income taxes in 1976." On this basis, the nonrecourse notes were not a bona fide

indebtedness. *Estate of Franklin v. Commissioner,* 544 F.2d 1045 (9th Cir. 1976), affg. 64 T.C. 752 (1975).

Even if we assume the nonrecourse note had value in the first instance, income would be realized only upon sale or disposition of the underlying property under the principles set forth in *Crane v. Commissioner,* 331 U.S. 1 (1947). Also see *Commissioner v. Tufts,* 461 U.S. 300 (1983); *Estate of Delman v. Commissioner,* 73 T.C. 15, 31-33 (1979); *Millar v. Commissioner,* 67 T.C. 656, 660 (1977), affd. on this issue 577 F.2d 212, 215-216 (3d Cir. 1978).

In the instant case, such event would have occurred when the partnership disposed of its interest in the coal leases. Based on the INAS partnership audit report, respondent determinated that the parties received income during 1977, because the partnership failed to obtain a site permit to mine coal and concluded that the note would be forgiven. There is no evidence in the record to support a finding that the partnership sold or disposed of the coal leases during 1977. As such, only the deduction claimed for 1976 should have been disallowed by respondent. It follows there was no basis in fact or law to determine that petitioners received income during 1977 on the theory that the nonrecourse note was forgiven.

Further, it is well settled that where there is no personal liability on a nonrecourse note there is no debt to cancel and no income to be realized based on cancellation of indebtedness. *Estate of Delman v. Commissioner, supra.*

We recognize that respondent must take alternative or inconsistent positions at times to protect the revenue, but he may not take such a position without good cause. *Doggett v. Commissioner,* 66 T.C. 101, 103 (1976), and cases cited therein. In the instant case, respondent's alternative position borders on being frivolous and was entirely without a legal or factual foundation. Accordingly, we conclude that respondent's position was unreasonable pursuant to section 7430 and petitioners are entitled to recover reasonable litigation costs. Because the parties are not in agreement as to the amount of the litigation costs that should be recovered, we must make this determination. In addition, we must decide whether the litigation costs allowable include the costs incurred for the appellate hearing.

Respondent contends that we should look to the proceedings in this Court and the Fifth Circuit as separate proceedings. Accordingly, he argues that petitioners must show that respondent's position was unreasonable in both proceedings to recover the litigation costs incurred in both proceedings. Otherwise, petitioners are limited to the litigation costs incurred in the proceeding where it was determined that respondent's position was unreasonable.

Because petitioners are entitled to recover reasonable litigation costs for the proceeding in this Court based on our finding that respondent's position was unreasonable, we will first make that determination.

Petitioners contend they are entitled to receive $10,662.50 based on 52 hours of work. This amount includes costs incurred to prepare the petition, to settle the case in Court, and for seeking an award for litigation costs. A breakdown of the time involved shows that counsel spent 6.5 hours to review facts and to prepare the petition filed in this Court for a total cost of $1,300. A review of this item shows that the petition is four pages in length and routine in nature. Although the hourly rate charged was $200 per hour, we think $75 per hour is a reasonable rate for the work involved, and, accordingly, allow $487.50. Petitioners are also entitled to recover $100.03 for the filing fee and other expenses. Counsel claims that it took 26.25 hours of work to settle the case with respondent. Respondent questions some of the hours claimed, but we find that respondent's allegations are not supported by the record and determine that the total hours claimed were incurred in trying to settle the case. However, we do not agree with petitioners that a charge of approximately $200 per hour is reasonable. The matter involved working out a rather routine tax shelter settlement. It did not include any complex, difficult or novel questions. On this basis, we find that $75 per hour is a reasonable rate, and allow $1,968.75.

To prepare a motion for litigation costs, an affidavit in support of the motion, perform research, and to file a reply to respondent's objection with regard to the motion, counsel submits that it took 19.25 hours. Counsel contends that a reasonable fee for this service is $4,115.50. However, it is noted that counsel did not follow Rule 231 in filing

petitioner's motion for litigation costs and improperly filed a stipulation for entry of decision. Based on the stipulation, the Court entered its decision. Petitioners were then required to file a motion to vacate the decision in order to allow the proper filing of petitioner's motion for litigation costs. We do not think that petitioners should be reimbursed for counsel's failure to comply with this Court's rules. Accordingly, we subtract 1 hour for this work, and petitioners will be reimbursed for 18.25 hours.

Here, again, we disagree with counsel's hourly rate. For matters dealing with the motion for litigation costs, counsel charged in excess of $200 per hour on the average. We think this is excessive for the work performed. The motion filed is routine and consists of three pages with an affidavit of legal services performed. We see nothing unique or complex, and, as we stated when petitioners' motion for litigation costs was initially before us, "the motion is so incomplete that it would be difficult, if not impossible, for this Court to identify any facts that might be in dispute for resolution by a hearing." *Powell v. Commissioner,* T.C. Memo. 1985-27 (49 T.C.M. 540, 542, 54 P-H Memo T.C. par. 85,027 at 85-121 (1985)). Accordingly, an hourly rate of $75 per hour is reasonable for the services performed. On this basis, petitioners are entitled to recover $1,368.75 for the 18.25 hours of services performed.

Based on the foregoing, petitioners are allowed a total recovery of $3,825 for reasonable attorney's fees. In addition, petitioners are entitled to be reimbursed for fees and certain costs in connection with the proceeding in this Court in the amount of $81.76.

Petitioners also claim they are entitled to recover reasonable attorney fees for the appeal of this case from this Court to the Court of Appeals for the Fifth Circuit. Petitioners claim they incurred $35,775 for attorney fees based on 207 hours of legal services and $1,254.99 for fees and certain costs in connection with the appeal. Petitioners contend that these fees should be considered as part of the litigation costs to be included in the award of litigation costs for the proceedings in this Court.

Respondent objects to the recovery of attorney fees incurred in the appellate proceeding on two grounds. First,

respondent argues that even if petitioners are entitled to recover costs and fees for the proceeding in this Court, they are not entitled to recover such costs and fees for the appeal on the ground that the appellate matter was a separate proceeding under section 7430. Further, respondent's position was not unreasonable in the appellate proceeding based on the fact that this Court upheld respondent's position, and, it was reasonable for respondent to contest petitioners' appeal. Second, respondent contends that if petitioners are entitled to recover, the fees claimed are unreasonable since the fees are based on an hourly rate of approximately $200. Respondent contends that $75 per hour is a reasonable rate for the services performed.

Respondent points out that it has been held that the position of the United States may be reasonable in opposing the award of litigation costs on appeal even though its position in the lower court proceeding was unreasonable citing *Cornella v. Schweiker,* 741 F.2d 170 (8th Cir. 1984); *Rawlings v. Heckler,* 725 F.2d 1192 (9th Cir. 1984). We agree. See *Lee v. Johnson,* 799 F.2d 31, 39-40 (3d Cir. 1986). Although these cases were brought under the Equal Access to Justice Act, we think the rationale is applicable under section 7430. *Powell v. Commissioner,* 791 F.2d 385, 389 (5th Cir. 1986).

Section 7430(c)(2)(A), in referring to the term "prevailing party," makes it clear that to be a prevailing party one must show that the position of the United States was unreasonable in the civil proceeding. Clearly, a proceeding in the Tax Court is not the same as a proceeding in the appellate court. Although they may be related, they are independent of each other. It is obvious that the United States' position could be unreasonable both in the Tax Court and the appellate court; but it is also obvious that such a position might prevail in one court without the other. Where the United States maintains a reasonable position in the appellate court, no award of litigation costs for such a proceeding will be made simply on the ground that its position in the Tax Court was unreasonable.

Further, it is petitioners who must bear the burden of proving that they are entitled to the litigation costs claimed as to the appellate proceeding. *Rutana v. Commissioner,* 88

T.C. 1329, 1332 (1987). Here, petitioners have failed to meet this burden. Petitioners' sole argument that the trial court proceeding and the appellate proceeding constitute one proceeding is based on the fact that the Fifth Circuit determined in the instant case that it was necessary to look to the reasonableness of the position of the United States which caused the litigation to determine whether the position of the United States was reasonable. We fail to follow petitioners' reasoning that such a holding is tantamount to a finding that the proceeding in the Tax Court and the Fifth Circuit constitute a single proceeding. Accordingly, we deny those litigation costs incurred on appeal to the Fifth Circuit on the ground that the position of respondent was reasonable. For this reason, we need not determine whether the fees claimed for the appellate proceeding are reasonable.

*An appropriate order and decision will be entered.*

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue.