RITA B. BOUTERIE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bouterie v. Commissioner
Docket No. 7848-91
United States Tax Court
T.C. Memo 1993-510; 1993 Tax Ct. Memo LEXIS 518; 66 T.C.M. (CCH) 1203; November 3, 1993, Filed *518 For petitioner: Michael A. Mayhall. For respondent: Scott T. Welch. SHIELDS
SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: This matter is before the Court on petitioner's motion for litigation costs under section 7430[1] and Rule 231. The issues for decision are: (1) Whether respondent's position was substantially justified; and (2) if not, whether the litigation costs claimed by petitioner are reasonable. FINDINGS OF FACT In a deficiency notice dated January 25, 1991, respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to tax
Sec. Sec. Sec. Sec. Year
Deficiency
6651(a) 6653(a) 6653(a)(1)
6653(a)(2)
1978
$  36,419.26
$  9,104.82
$  1,820.96
-- --
1979
107,207.72
5,361.01
5,476.44
-- --
1980
88,081.29
-- 4,404.06
-- --
1981
25,938.48
6,484.62
-- $ 1,296.92
[1] 1982
18,330.58
4,582.65
-- 916.53
[2] 1984
13,585.00
-- -- 679.25
[3] 289,562.33
25,533.10
11,701.46
2,892.70
*519 In a stipulated decision entered herein on July 15, 1992, the parties agreed as follows: (1) That there were no deficiencies in income tax due from petitioner for the taxable years 1978, [2] 1979, 1980, 1981, 1982, and 1984, with the exception of a deficiency for the taxable year 1982 in the amount of $ 3,191; and (2) that there were no additions to tax due from petitioner for the taxable years 1978, 1979, 1980, 1981, 1982 and 1984. On October 27, 1992, the stipulated decision was vacated so that petitioner's motion for litigation costs could be considered. Petitioner, a cash basis taxpayer, was a resident of Louisiana when she filed her petition in this case. She and her former husband, William H. Boyle, Sr. (Mr. Boyle), were married in Louisiana in 1966. In 1967 they moved to Memphis where Mr. Boyle, d.b.a. Bill Boyle Agency, was a life insurance agent or broker for American Income Life Insurance Company, Inc. *520 (AILIC), and petitioner was the secretary and office manager for the agency. From 1967 through November 13, 1978, they continued this arrangement with AILIC as they moved the agency from Memphis to Salt Lake City, to Denver, and then in 1974 to Louisiana, a community property State. Under his agreement with AILIC each life insurance policy sold by Mr. Boyle for AILIC not only generated a sales commission in the year of sale but also generated annual renewal commissions in future years so long as the policy remained in force. Also under Mr. Boyle's agreement with AILIC, when generated, the annual renewal commissions on policies sold by Mr. Boyle were credited to his account on the books of AILIC, and AILIC made monthly advances in amounts determined by AILIC in the form of loans to Mr. Boyle which were charged against this account. On November 13, 1978, petitioner filed a petition against Mr. Boyle for separation from bed and board with the Civil District Court, Parish of Orleans, State of Louisiana. Her petition for separation was granted on May 31, 1979, by the district court. Under the State law the granting of the petition for separation retroactively terminated the community *521 of acquets and gains (i.e., community property) between petitioner and Mr. Boyle as of November 13, 1978, the date the petition for separation was filed. La. Civ. Code Ann. art. 155 (West 1952 & Supp. 1978). However, the parties were not divorced until September 24, 1985. In a judgment with respect to the parties' respective interests in the Bill Boyle Agency which was entered on June 3, 1983, the civil district court concluded in part as follows: Commissions payable to WILLIAM BOYLE on renewal premiums for policies of insurance written prior to November 13, 1978, are community property. Commissions payable to WILLIAM BOYLE on renewal premiums for policies of insurance written on or after November 13, 1978, are the separate property of WILLIAM BOYLE.
On appeal of the district court's judgment to the Court of Appeals of Louisiana, Fourth Circuit, petitioner contended that she had been so active in Mr. Boyle's agency during their marriage that, in addition to accruing her one-half interest in the renewal commissions earned prior to November 13, 1978, she had also acquired, with Mr. Boyle's approval, a partnership interest which continued after the legal separation. The appellate *522 court rejected petitioner's partnership claim, but affirmed the district court's conclusion with respect to the renewal commissions. On October 16, 1990, the district court entered a judgment against Mr. Boyle in which he was ordered to pay petitioner $ 488,136 as her share of the community property. Mr. Boyle's motion for a new trial was denied, and an appeal by him from the judgment of October 16, 1990, to the Fourth Circuit Court of Appeals of Louisiana was still pending on February 9, 1993. The monthly advances determined by AILIC and credited to Mr. Boyle's account during 1978 through 1984 amounted to $ 5,000 per month. During November and December of 1978 through 1984, one-half of each advance or $ 2,500 per month was paid by Mr. Boyle to petitioner and reported by her to respondent as income from alimony on the separate returns she filed with respondent for 1978, 1979, 1980, 1981, and 1984. Petitioner did not file returns for 1982 and 1983. Mr. Boyle did not make any payments to petitioner during 1978 through 1984 for her part of the renewal commissions earned by him during 1978 through 1984 on policies sold by him prior to November 13, 1978. In fact, he denied receiving *523 any such commissions. Mr. Boyle did not file income tax returns for the taxable years 1978 through 1984, but Forms 1099 purportedly reflecting renewal commissions earned by Mr. Boyle during these years were filed annually by AILIC with respondent. On each of the Forms 1099 filed during these years by AILIC, the commission income earned by Mr. Boyle was incorrectly lumped together with similar commissions paid to other agents of AILIC. [3]
On May 10, 1989, respondent mailed to Mr. Boyle a notice of deficiency covering the years 1978, 1979, 1980, 1981, 1983, and 1984. In the notice, respondent determined that Mr. Boyle's filing status for 1978 was "married filing separate return" and his status for each other year was "single". *524 For 1978 respondent also determined that 50 percent of the renewal commissions earned by Mr. Boyle was reportable by him and 50 percent by petitioner. For the other years respondent determined that Mr. Boyle was required to report 100 percent of the renewal commissions. In conclusion respondent determined there were deficiencies in income tax due from Mr. Boyle totaling $ 422,615 and additions to tax totaling $ 149,950 for the years 1978, 1979, 1980, 1981, 1983, and 1984. On August 10, 1989, Mr. Boyle filed a petition from his deficiency notice with this Court in docket No. 19783-89, in which he denied, among other things, that his proper filing status for 1978 was married filing separate return and for 1979 through 1984 was single. On July 15, 1992, Mr. Boyle and respondent entered a stipulated decision in his case in which they agreed that Mr. Boyle had total deficiencies in income tax in the amount of $ 8,168 for tax years 1978, 1979, 1983, and 1984, and additions to tax in the total amount of $ 208 for tax years 1978, 1979, and 1984. In the meantime, respondent, for the stated purpose of protecting the revenue, had mailed to petitioner on January 25, 1991, a deficiency notice *525 in which respondent determined that renewal commissions earned by Mr. Boyle during 1978 through 1984 on policies sold by him prior to November 13, 1978, constituted community income and that petitioner owed income tax on one-half of such renewal commissions. Respondent further determined that petitioner's filing status for 1978 was married filing separate return and for 1979 through 1984 was single. In the revenue agent's report on his examination of petitioner's returns, it is accurately stated that, when the petition for legal separation of petitioner was granted, the community of acquets and gains, i.e., community property, ceased retroactively as of November 1978. This report also says that "The tp [i.e., petitioner] has engaged in numerous court proceedings relative to what she feels is or should have [been hers] as far as the business is concerned." In her petition filed on April 29, 1991, petitioner alleged that she had filed a petition for separation from Mr. Boyle in the State court on November 13, 1978; that a judgment of separation had been entered by the State court on May 31, 1979; that, with the entry of the judgment of separation, the community of acquets and gains *526 between petitioner and Mr. Boyle had been retroactively terminated as of November 13, 1978, when her petition for separation was filed; and that consequently respondent had erred in determining in the notice that petitioner realized community income by reason of the renewal commissions received by Mr. Boyle after November 13, 1978. Petitioner further alleged that, as a cash basis taxpayer, she was not required to report such renewal commissions after the date of the separation because she had neither actually nor constructively received such commissions. In the answer which was filed on July 5, 1991, respondent admitted that a petition for separation had been filed by petitioner in November 1978; that a judgment of separation had been granted in 1979; that upon the granting of the judgment of separation the marital community had retroactively terminated as of November 1978 when the petition for separation was filed; and that petitioner was a cash basis taxpayer. Respondent denied for lack of sufficient information petitioner's allegation that she had not received any of Mr. Boyle's commission income. During the balance of 1991 and part of 1992, counsel for the parties exchanged *527 a number of telephone calls and letters in an effort to clarify the applicable facts and law, especially with respect to renewal commissions earned by Mr. Boyle after November 13, 1978, the date the petition for separation was filed. During these exchanges, respondent continued to maintain that such renewal commissions during the years at issue constituted community income and that petitioner should have reported one-half of such commissions when they were received by Mr. Boyle. In January of 1992 respondent, in reply to a discovery request by petitioner, forwarded documents pertaining to the earlier divorce action between the parties. These documents included a "Post Partition Trial Memorandum of William Boyle", which included the statement that "After * * * August 31, 1985, all deposits [of renewal commissions] went into an escrow account until a partial settlement as of June 17, 1988, at which time the entire account and all continuing payments have been divided equally between the parties". The documents also included a paper entitled "Plaintiff's Proof of Community Estate", in which counsel for petitioner (in the divorce action) verified that, prior to 1985, Mr. Boyle received *528 all renewal commissions earned on the former community accounts and that it was not until 1985 that any premiums were deposited in the escrow account. [4]
Finally, in a letter dated January 31, 1992, respondent's counsel stated: "At this time, we do not have any information to indicate that the petitioner 'actually' physically received the income from the policy renewals in the years 1978 through 1984. However, it is respondent's position that the petitioner 'constructively' received the policy renewal income because it was deposited into an escrow account for the benefit of both spouses during the divorce proceedings." This is the first point in the record where respondent asserted any argument based on constructive receipt. *529 In the same letter respondent, citing La. Civ. Code Ann. art. 2338 (West 1985), continued to maintain that petitioner had community income in the years in question because the "fruits or revenues from community assets are community property". In a letter dated February 24, 1992, petitioner's counsel responded by citing authorities for petitioner's position: (1) That after the termination of the marital community in November of 1978, the renewal policies were no longer community assets but assets held by the parties in coownership; (2) that the renewal commissions were no longer community income but the separate income of each coowner to the extent of his or her one-half interest; and (3) that petitioner was not taxable on her one-half of the renewal commissions because she had neither actually nor constructively received them. In the same letter, petitioner's counsel, citing West v. Ortego, 325 So. 2d 242 (La. 1975), pointed out that the statutory provision on which respondent's counsel was relying, i.e., article 2338, dealt with a marital community during the period of its existence, not after its termination. Most of the authorities provided by *530 petitioner's counsel for the proposition that, after the termination of a marital community, the former spouses hold any property which was formerly community property as coowners deal with Louisiana law. However the Federal tax cases holding that income from a former marital community is taxable to the person who actually or constructively receives it deal with the community property law of the State of Texas. Nevertheless, on July 9, 1992, respondent conceded the issue, and the parties filed the stipulated decision in this case on July 15, 1992. Thereafter petitioner filed her motion and supporting documents for attorney's fees, and respondent filed an objection to the motion. Examination of all relevant documents in the file indicates that on or shortly before April 18, 1991, petitioner contacted Attorney Michael A. Mayhall (Mr. Mayhall) about representing her in this case, and on April 19, 1991, they entered into a written contract with regard to such services. Prior to June 8, 1992, legal services were billed by Mr. Mayhall pursuant to the contract at the following rates: Mr. Mayhall's fee of $ 150 per hour, other lawyers' services at $ 135, $ 100, and $ 90 per hour, and *531 paralegal fees at $ 55 per hour. Total attorney's fees were $ 30,884 (representing 287.45 hours), and total paralegal fees were $ 1,573 (representing 28.9 hours). In addition, the following separately billed expenses were incurred: Filing fee in the amount of $ 60, expert witness fee in the amount of $ 1,048.75, long distance telephone charges of $ 117, facsimile charges of $ 5.50, copy costs of $ 211.45, postage costs of $ 6.96 and miscellaneous fees of $ 12.77. In total, petitioner requests an award of legal expenses as follows: EXPENDITURE AMOUNT Attorneys' fees
$ 30,884.00
Paralegal fees
1,573.00
Expert's report
1,048.75
Filing fee
60.00
Miscellaneous
353.68
TOTAL
33,919.43
The expert witness fee was for a separate legal opinion dated May 1, 1992, concerning specifically certain terminology used by the district court when referring to former community property in its opinion of June 3, 1983, and generally with respect to the use of such terminology by members of the Louisiana bar and judiciary. Petitioner also seeks reasonable fees in an unstated amount for the preparation and presentation of her motion for litigation costs. OPINION In a proceeding before *532 this Court to determine the amount of any tax, interest, or penalty, we are authorized to award to the "prevailing party" a judgment for the reasonable litigation costs incurred in the proceeding. Sec. 7430(a).[5] In order to be awarded such costs, the taxpayer must have exhausted all administrative remedies within the Internal Revenue Service, sec. 7430(b)(1); must not have protracted the proceedings, sec. 7430(b)(4); and must establish that the costs are reasonable, sec. 7430(c)(1). The taxpayer has the burden of proof on all of the requirements. Rule 232(e); Sher v. Commissioner, 89 T.C. 79 (1987), affd. 861 F.2d 131 (5th Cir. 1988). The parties agree that petitioner exhausted her administrative remedies and did not protract the proceedings. Respondent denies that petitioner was the prevailing party and that the amount of costs claimed by petitioner is reasonable. Should we find that petitioner was not the prevailing party, it will be unnecessary for us to consider whether the litigation costs claimed were reasonable. *533 To be the "prevailing party" under section 7430(a), the taxpayer must establish: (1) That the position of the United States was not substantially justified; (2) that the taxpayer substantially prevailed with respect to the amount in controversy or the most significant issues presented; and (3) that at the commencement of the proceeding she had a net worth of not more than $ 2 million, sec. 7430(c)(4). The parties agree that petitioner substantially prevailed and that she satisfies the net worth requirements. Respondent maintains that petitioner fails to satisfy the statutory definition of "prevailing party" because the position of the United States was substantially justified. We begin by considering when the position of the United States was established. Sec. 7430(c)(4)(A)(i). For cases filed after November 10, 1988, in which, as here, the taxpayer seeks litigation expenses, we evaluate "the position taken by the United States in a judicial proceeding to which subsection (a) applies". Sec. 7430(c)(7)(A). We take the term "judicial proceeding" to be identical with "court proceeding", as defined in section 7430(c)(6), i.e., "any civil action brought in a court of the United *534 States (including the Tax Court and the United States Claims Court)." Respondent's position in a judicial proceeding or court proceeding is established in her answer. Huffman v. Commissioner, 978 F.2d 1139, 1143-1147 (9th Cir. 1992), affg. in part, revg. in part on other grounds and remanding T.C. Memo. 1991-144. Respondent's position in the answer was based upon the theory that petitioner received community income from community property during the years in question, and it is upon this position that we focus. [6]
*535 The determination as to whether respondent's position is "substantially justified", sec. 7430(c)(4)(A)(i), involves, essentially, a determination of whether the position was reasonable. [7]Sokol v. Commissioner, 92 T.C. 760, 763-764 n.7 (1989); Sher v. Commissioner, supra at 84. A determination of reasonableness must be based on all the facts and legal precedents relating to the case. Sher v. Commissioner, supra at 84-85 (citing H. Rept. 97-404, at 12 (1981), the legislative history to the original enactment of section 7430 in the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 292(a), 96 Stat. 324, 572-574). The fact that respondent eventually loses or concedes the case does not, of itself, establish that her position was unreasonable. Heasley v. Commissioner, 967 F.2d 116, 120 (5th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-189; Coastal Petroleum Refiners v. Commissioner, 94 T.C. 685, 689 (1990); Sokol v. Commissioner, supra at 767. *536 However, it clearly remains a factor to be considered. Heasley v. Commissioner, supra; Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Powers v. Commissioner, 100 T.C. 457 (1993). In interpreting the term "substantially justified" in the Equal Access to Justice Act, 28 U.S.C. sec. 2412(d) (1988), the Supreme Court held that it does *537 not mean "justified to a high degree", but rather "justified in substance or in the main"; i.e., to the degree that could satisfy a reasonable person. Pierce v. Underwood, 487 U.S. 552, 565 (1988). "But a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." Id. at 566 n.2. Respondent's taking inconsistent positions with respect to taxpayers who have themselves taken inconsistent positions on the taxability of payments is not in itself unreasonable. Wickert v. Commissioner, 842 F.2d 1005 (8th Cir. 1988), affg. T.C. Memo. 1986-277. We recognize that respondent must take alternative or inconsistent positions at times to protect the revenue, but she may not take such a position without good cause. Powell v. Commissioner, 91 T.C. 673, 679 (1988), revd. on another issue and reformed 891 F.2d 1167 (5th Cir. 1990); Doggett v. Commissioner, 66 T.C. 101, 103 (1976). *538 In this case the positions of the related taxpayers were not so much inconsistent as nonexistent. Under the facts of this case, where it was not possible to determine whether the taxpayers would treat the renewal payments consistently, we find that respondent was justified in issuing a notice of deficiency to petitioner for the purpose of protecting the revenue. Our conclusion is that respondent's legal position was one that a reasonable person could find to be correct. Respondent was frustrated in efforts to determine the correct amount of petitioner's income because Mr. Boyle failed to file income tax returns for the years in question and petitioner herself failed to file for tax years 1982 and 1983. Determination of the correct amount of petitioner's income was inextricably involved with determination of Mr. Boyle's income. Had Mr. Boyle subsequently established the position that he was taxable on only 50 percent of the renewal commission income and had respondent not determined a deficiency against petitioner, that income would have escaped taxation. We note in this context that, in his petition to this Court dated September 14, 1989, Mr. Boyle alleged that respondent had *539 erred in determining his filing status for 1978 was married filing separate return and for the years 1979 through 1984 was single. [8] When respondent is forced to proceed in the dark, as a result of a taxpayer's failure to file returns, respondent is justified in taking inconsistent positions to protect the revenue. In taking the position that petitioner was liable for tax on "community income", respondent relied on the opinion of the Louisiana district court in petitioner's divorce and property division case, which stated that "Commissions payable to WILLIAM BOYLE on renewal premiums for policies of insurance written prior to November 13, *540 1978, are community property." This holding was affirmed without modification by the Louisiana Court of Appeals, Boyle v. Boyle, 459 So. 2d 735, 736 (La. Ct. App. 1984), affg. No. 80-15448 c/w No. 78-16580 (Civ. Dist. Ct. June 3, 1983). Respondent argues, with justification, that she was entitled to rely on a determination of the issue of community property by the Louisiana court. While Federal law determines the taxability of income, we refer to the laws of Louisiana to determine the nature and extent of petitioner's ownership of the income in question. United States v. Mitchell, 403 U.S. 190, 195 (1971); Burnet v. Harmel, 287 U.S. 103, 110 (1932) ("state law creates legal interests but the federal statute determines when and how they should be taxed"); Bagur v. Commissioner, 66 T.C. 817 (1976), remanded on another issue 603 F.2d 491 (5th Cir. 1979). The general rule is that, in a community property State where husband and wife are each "owners" of 50 percent of the income of the community, each has a right to file a separate return, *541 reporting one-half of his or her own income and one-half of the spouse's income. Poe v. Seaborn, 282 U.S. 101 (1930). In United States v. Mitchell, supra, the Supreme Court held that spouses residing in a community property State and filing separate returns have not only the right but the duty to report half of the income of the community, regardless of receipt. Respondent based her argument in the present case essentially upon United States v. Mitchell, supra, a case which dealt with the taxability of spouses during the existence of the marital community. Respondent also cited Kimes v. Commissioner, 55 T.C. 774 (1971); Hilton v. Commissioner, T.C. Memo. 1990-379; and Rev. Rul. 74-393, 1974-2 C.B. 28, 29. Under Louisiana law, however, after the termination of the marital community, the property of the former community is held by the former spouses as coowners, sometimes termed coowners in indivision. Bolden v. Bolden, 524 So. 2d 10, 11 (La. Ct. App. 1988); *542 Cooper v. Cooper, 303 So. 2d 319, 320 (La. Ct. App. 1974). Ultimately respondent conceded that her interpretation of this aspect of Louisiana law was incorrect. We attribute respondent's concession to the fact that petitioner's attorney obtained an expert opinion from a specialist in Louisiana domestic relations law. This opinion was dated May 1, 1992, and the stipulated decision was entered July 9, 1992. This expert opinion showed that the use of the term "community property" in the opinion of the Louisiana district court was misleading. It stated that it was the custom in the domestic relations courts in Louisiana to use the term "community property" in lieu of the more cumbersome, but understood, phrase "assets of the former marital community". Furthermore, the expert opinion points out that petitioner's divorce decision referred to renewal commissions on policies written by Mr. Boyle during the marriage as "community property" in order to distinguish them from commissions on policies written after the dissolution of the community, which were the "separate property" of Mr. Boyle. The expert opinion also stressed that it was understood that *543 income from property which was formerly owned by the community was not community income, but rather income from property held as coowners in indivision. Upon receipt of the expert opinion, respondent conceded the issue, and within 3 months the stipulated decision was entered. We conclude that respondent acted in accordance with reason by conceding the point within a short time after the Louisiana court's misleading terminology was clarified. Sher v. Commissioner, 89 T.C. at 87. This case is therefore distinguishable from Lennox v. Commissioner, 998 F.2d 244 (5th Cir. 1993), revg. in part and remanding T.C. Memo. 1992-382, as in Lennox the Court of Appeals observed that there was no new evidence between the time of respondent's deficiency notice and the stipulated decision to justify respondent's change of position. Petitioner presented documentation of the treatment under Louisiana law of assets of a former marital community, but no authority on the proper Federal tax treatment of income generated by former community assets of a former Louisiana marital community. The Federal tax cases *544 cited by petitioner all arose under the community property law of Texas. Osceola Heard Davenport v. Commissioner, a Memorandum Opinion of this Court dated July 30, 1953; Dee Davenport v. Commissioner, a Memorandum Opinion of this Court dated July 30, 1953; Farrell v. Commissioner, 45 B.T.A. 162 (1941), affd. 134 F.2d 193 (5th Cir. 1943). These cases focus upon the issues of actual and constructive receipt to determine the taxability of the income in question. We are not satisfied, however, that the law on the Federal income taxation of the payments in question was settled or clear, in view of the fact that there were at that time no Federal tax cases dealing with the taxation of ordinary income generated by assets of a former Louisiana marital community. We find that respondent's legal position had a basis in law and fact sufficient to satisfy a reasonable person. The issue of the Federal taxability of income of former Louisiana community property was unsettled, and respondent did not know whether petitioner and Mr. Boyle would take consistent or inconsistent positions with respect to the taxability of this income. *545 We therefore hold that petitioner was not a "prevailing party" within the meaning of section 7430(c)(4) and is consequently not entitled to an award of litigation expenses. An appropriate order and decision will be entered. Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest on $ 25,938.48.↩
2. 50 percent of the interest on $ 18,330.58.↩
3. 50 percent of the interest on $ 13,585.00.↩
2. In her answer, respondent conceded that the notice of deficiency for tax year 1978 was untimely.↩
3. According to AILIC the only way Mr. Boyle's commission income for the years 1978 through 1984 could have been correctly determined was by reference to monthly statements given to Mr. Boyle by AILIC, which monthly statements were not available to respondent's agent during the agent's examination.↩
4. A record of the deposits of policy renewals into the escrow account was said to be enclosed with a letter from respondent dated Jan. 17, 1992, but is not in the record. However, the documents referred to in this paragraph are listed in the letter from petitioner's counsel dated Feb. 24, 1992.↩
5. Insofar as applicable here, sec. 7430 reads as follows: SEC. 7430. AWARDING OF COSTS AND CERTAIN FEES. (a) In General. -- In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for -- (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and (2) reasonable litigation costs incurred in connection with such court proceeding. (b) Limitations. -- (1) Requirement that administrative remedies be exhausted. -- A judgment for reasonable litigation costs shall not be awarded under subsection (a) in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service. * * * (4) Costs denied where party prevailing protracts proceedings. -- No award for reasonable litigation and administrative costs may be made under subsection (a) with respect to any portion of the administrative or court proceeding during which the prevailing party has unreasonably protracted such proceeding. (c) Definitions. -- For purposes of this section -- (1) Reasonable litigation costs. -- The term "reasonable litigation costs" includes -- (A) reasonable court costs, and (B) based upon prevailing market rates for the kind or quality of services furnished -- (i) the reasonable expenses of expert witnesses in connection with a court proceeding, except that no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States, * * * (iii) reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $ 75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate. * * * (4) Prevailing party. -- (A) In general. -- The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved) -- (i) which establishes that the position of the United States in the proceeding was not substantially justified, (ii) which -- (I) has substantially prevailed with respect to the amount in controversy, or (II) has substantially prevailed with respect to the most significant issue or set of issues presented, and (iii) which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28, United States Code (as in effect on October 22, 1986) except to the extent differing procedures are established by rule of court and meets the requirements of section 2412(d)(2)(B) of such title 28 (as so in effect) * * * (6) Court proceedings. -- The term "court proceeding" means any civil action brought in a court of the United States (including the Tax Court and the United States Claims Court). (7) Position of United States. -- The term "position of the United States" means -- (A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and (B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of -- (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency.↩
6. In deciding this case, we follow the precedents established by the U.S. Court of Appeals for the Fifth Circuit, to which this case is appealable. Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). In the case of Lennox v. Commissioner, 998 F.2d 244 (5th Cir. 1993), revg. in part and remanding T.C. Memo. 1992-382, the Court of Appeals held that the position of the United States in an administrative proceeding, as defined in sec. 7430(c)(7)(B), was unreasonable. The Court of Appeals held that the reasonableness of the Government's position must be analyzed in the context of administrative actions leading up to the issuance of the notice of deficiency. The case at bar deals with litigation expenses under sec. 7430(c)(7)(A) rather than administrative expenses under subsec. (c)(7)(B), and is also distinguishable on other grounds. See infra↩ pp. 22-23. At all events petitioner has not established that the administrative actions leading up to the issuance of the notice of deficiency were unreasonable.
7. For proceedings commenced after Dec. 31, 1985, the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(d)(1), 100 Stat. 2085, 2752, changed the language describing the position of the United States from "unreasonable" to "not substantially justified", to conform to the standard applicable under the Equal Access to Justice Act, 28 U.S.C. sec. 2412(d) (1988). Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131↩ (5th Cir. 1988).
8. We take it as an inadvertent error that Mr. Boyle's petition states that the commissioner "erred * * * in determining that the taxpayer's filing status for the year ended Dec. 31, 1978, was that of a single↩ individual filing a separate return" (emphasis supplied), as respondent actually determined that for 1978 Mr. Boyle and petitioner were married filing separate returns.