T.C. Memo. 2015-160

UNITED STATES TAX COURT

ETHEL MIRIAM PUTNAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29006-13.                    Filed August 17, 2015.

Ethel Miriam Putnam, pro se.

<u>Michael A. Raiken</u>, for respondent.

MEMORANDUM OPINION

RUWE, <u>Judge</u>:  This matter is before the Court on respondent's motion to

dismiss for lack of prosecution and motion to impose sanctions.  In a notice of

deficiency dated September 17, 2013, respondent determined deficiencies in

[*2] petitioner's Federal income tax and additions to tax under section 6651(f)[1] as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(f) |
|------|-----------|------------------------------|
| 2004 | $222,027 | $166,520.25 |
| 2005 | 328,652 | 246,489.00 |
| 2006 | 389,425 | 292,068.75 |
| 2007 | 350,067 | 262,550.25 |
| 2008 | 232,234 | 174,175.50 |
| 2009 | 9,916 | 7,437.00 |

## Background

Petitioner resided in Maryland when she timely filed her petition with this Court.

## Respondent's Answer

In his answer filed March 14, 2014, respondent asserted additions to tax under sections 6651(a)(2) and 6654 as follows:

| Year | Additions to Tax Sec. 6651(a)(2) | Sec. 6654 |
|------|----------------------------------|-----------|
| 2004 | $55,506.75 | $6,362.65 |
| 2005 | 82,163.00 | 13,182.75 |
| 2006 | 97,356.00 | 18,429.15 |
| 2007 | 87,516.75 | 15,932.50 |

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for all relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]     2008          58,058.50               7,463.21
         2009           2,330.26                 237.39

See infra Appendix B.  Alternatively, respondent asserts that additions to tax

under section 6651(a)(1) should apply for the taxable years 2004, 2005, 2006,

2007, 2008, and 2009 (years in issue) if we decide that the section 6651(f)

additions to tax do not apply.

On March 28, 2014, petitioner filed a motion to strike, alleging that nothing

in respondent's answer proves that the "constitution and code" apply to her and

that a hearing should be conducted in order for respondent to prove his facts.  The

Court subsequently denied petitioner's motion to strike on April 3, 2014.[2]

Respondent filed, on April 29, 2014, a motion for entry of order that undenied

allegations in the answer be deemed admitted pursuant to Rule 37(c).  On May 6,

2014, petitioner filed a reply to respondent's answer in which she generally denied

the allegations set forth in respondent's answer and further asserted that "the U.S.

Constitution or the Internal Revenue Code" do not apply to her.  The Court denied

respondent's April 29 motion under Rule 37(c) on May 14, 2014.

---

[2]On April 21, 2014, petitioner filed a letter dated April 16, 2014, seeking informal discovery from respondent.

**[*4]** Respondent's Request for Admissions

On September 4, 2014, respondent filed with the Court and served on petitioner a first request for admissions.  See infra Appendix A.

On September 19, 2014,[3] petitioner filed a response to respondent's first request for admissions (first response), objecting to respondent's requests because "they are not relevant until the Respondent provides the evidence to prove its [sic] allegations against the Petitioner."  In her first response petitioner also states:

> The petitioner has continually asked the Respondent to show with evidence and witnesses that the IRS has jurisdiction over the petitioner, the US Constitution and the tax laws apply to the petitioner, the petitioner had taxable income, and that the petitioner has a requirement to file.

> Given that the IRS and * * * [respondent] have knowingly proceeded with these allegations and collection process without any evidence or witnesses, the Respondent has shown bad faith and lacks the proper execution of due process.

On October 7, 2014, respondent filed a motion to review the sufficiency of petitioner's response to first request for admissions (motion to review the sufficiency) pursuant to Rule 90(e).  Shortly thereafter, on October 14, 2014, petitioner filed an amended response to respondent's first request for admissions (amended response).  Petitioner again asserted in her amended response that

---

[3]On September 19, 2014, petitioner also filed a motion to vacate or strike any presumption of correctness, which the Court denied on September 30, 2014.

[*5] respondent has not shown, inter alia, that "the US Constitution and the tax laws apply to the petitioner, the petitioner had taxable income, and that the petitioner has a requirement to file." Because petitioner's first response and amended response did not comply with Rule 90, did not set forth any legitimate objections or grounds for refusing to answer each request for admission, and did not demonstrate that petitioner attempted in good faith to respond to respondent's first request for admissions, by order dated October 14, 2014, we granted respondent's motion to review the sufficiency and directed petitioner to answer each of the admission requests included in respondent's first request for admissions on or before November 14, 2014. Petitioner was also advised that failure to comply with our order may be grounds for sanctions, including an order that respondent's requested admissions be deemed admitted.

On October 20, 2014, petitioner filed a response to respondent's motion to review the sufficiency. Because we determined that petitioner's response did not comply with our October 14, 2014, order, we directed petitioner by order dated November 21, 2014, to file and serve on respondent a second amended response to respondent's first request for admissions. We also advised petitioner that the Court would not be inclined to provide her with further opportunities to amend her responses to respondent's first request for admissions before imposing sanctions.

**[\*6]** On December 1, 2014, petitioner filed her second amended response to respondent's first request for admissions.  On December 24, 2014, respondent filed a motion to review the sufficiency of petitioner's second amended response to respondent's first request for admissions.  Petitioner filed an objection thereto on January 7, 2015.  By order dated January 9, 2015, we granted respondent's December 24 motion and directed petitioner to file amended responses to respondent's first request for admissions on or before January 23, 2015.

Rule 90(g) provides for sanctions for failure to properly respond to respondent's request for admissions, including the sanctions in Rule 104(c) of title X of the Rules.  Our January 9, 2015, order cautioned petitioner as follows:

> Petitioner is advised that failure to comply with this order may result in the imposition of sanctions pursuant to Tax Court Rule 104(c), which states:

> > **(c) Sanctions:**  If a party or an officer, director, or managing agent of a party or a person designated in accordance with Rule 74(b) or (c) or Rule 81(c) fails to obey an order made by the Court with respect to the provisions of Rule 71, 72, 73, 74, 81, 82, 83, 84, or 90, then the Court may make such orders as to the failure as are just, and among others the following:

> > > (1)  An order that the matter regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order.

**[*7]**              (2)  An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting such party from introducing designated matters in evidence.

(3)  An order striking out pleadings or parts thereof, staying further proceedings until the order is obeyed, dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.

Petitioner failed to comply with the Court's order to file amended responses to respondent's first request for admissions.

Respondent's Discovery Requests

Respondent served interrogatories and a request for production of documents on petitioner on September 4, 2014.  On December 24, 2014, respondent filed a motion to compel responses to interrogatories and a motion to compel production of documents (motions to compel).  Petitioner filed separate objections to respondent's motions to compel on January 7, 2015.  By orders dated January 9, 2015, we directed petitioner to furnish respondent answers to the interrogatories and to provide respondent with the documents requested in the request for production of documents on or before January 23, 2015.  The orders further advised petitioner

that failure to comply with this order may result in the imposition of sanctions pursuant to Tax Court Rule 104(c), which states:

[*8]    **(c) Sanctions:**  If a party or an officer, director, or managing agent of a party or a person designated in accordance with Rule 74(b) or (c) or Rule 81(c) fails to obey an order made by the Court with respect to the provisions of Rule 71, 72, 73, 74, 81, 82, 83, 84, or 90, then the Court may make such orders as to the failure as are just, and among others the following:

(1)  An order that the matter regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order.

(2)  An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting such party from introducing designated matters in evidence.

(3)  An order striking out pleadings or parts thereof, staying further proceedings until the order is obeyed, dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.

Petitioner failed to comply with either January 9 order regarding respondent's motions to compel.

Failure To Appear at Trial

On September 9, 2014, the Court served on the parties a notice setting case for trial and a standing pretrial order, which advised that petitioner's trial was set for February 9, 2015, in Baltimore, Maryland.  The notice setting case for trial states, in pertinent part:

The parties are hereby notified that this case is set for trial at the Trial Session beginning at <u>10:00 AM</u> on <u>Monday, February 9,</u>

**[*9]** 2015.  The calendar for that Session will be called at that date and time, and the parties are expected to be present and to be prepared to try the case. Your failure to appear may result in dismissal of the case and entry of decision against you.

\*      \*      \*      \*      \*      \*      \*

The parties should contact each other promptly and cooperate fully so that the necessary steps can be taken to comply with these requirements.  **Your failure to cooperate may also result in dismissal of the case and entry of decision against you.**

The standing pretrial order requires that all facts be stipulated to the maximum extent possible, all documentary and written evidence be stipulated in accordance with Rule 91(b), and each party prepare and submit pretrial memoranda not less than 14 days before the first day of the trial session.  The standing pretrial order also warns the parties as follows:

**Sanctions.**  The Court may impose appropriate sanctions, including dismissal, for any unexcused failure to comply with this Order.  See Rule 131(b).  Such failure may also be considered in relation to sanctions against and disciplinary proceedings involving counsel.  See Rule 202(a).

On November 12, 2014, petitioner filed a notice of withdrawal, which was recharacterized as a motion to dismiss, seeking to withdraw her petition from this

[*10] Court. We subsequently denied petitioner's motion as explained in our order dated November 21, 2014.[4]

On January 12, 2015, petitioner filed a motion for summary judgment and a motion for continuance. By order dated January 14, 2015, we denied petitioner's January 12 motions and reminded the parties that the terms and conditions set forth in our standing pretrial order remain in full force and effect.

On January 21, 2015, petitioner filed a second notice of withdrawal, informing the Court, among other things, that

> the Petitioner will not comply with the court order and will not attend the trial. The Petitioner refuses to participate is [sic] such a dishonest and corrupt proceeding. This "court" is merely a rubber-stamp of IRS crimes and no honest adult could participate.

Petitioner did not appear at trial on February 9, 2015. Respondent appeared and was heard. During the course of the Court's session in Baltimore, Maryland, respondent filed a written motion to impose sanctions for petitioner's noncompliance with Court orders concerning respondent's first request for admissions and the motions to compel. Shortly thereafter, on February 13, 2015, respondent filed a written motion to dismiss for lack of prosecution.

---

[4]The petition in this case is based upon a notice of deficiency, and therefore petitioner may not withdraw the petition with or without prejudice. See Settles v. Commissioner, 138 T.C. 372, 374 (2012).

**[*11]**                                   Discussion

1. <u>Requests for Admission</u>

Rule 90(a) permits a party to serve a written request for admission of relevant and unprivileged matter upon the other party.  Each matter in the request is deemed admitted unless, within 30 days after service of the request, the party to whom the request is directed serves upon the requesting party:  (1) a written answer specifically admitting or denying the matter involved in whole or in part or asserting that it cannot be truthfully admitted or denied and setting forth in detail the reasons why this is so or (2) an objection, stating in detail the reasons therefor.  Rule 90(c).  Any fact deemed admitted under Rule 90(c) is conclusively established.  Rule 90(f).

On September 4, 2014, respondent filed with the Court and served on petitioner a first request for admissions.  <u>See</u> <u>infra</u> Appendix A.  Petitioner's responses to respondent's first request for admissions did not set forth any legitimate objections or grounds for refusing to answer each request for admissions, were replete with tax-protester/tax-defier rhetoric,[5] and did not

---

[5]Throughout her pleadings petitioner continually advanced arguments permeated with tax-protester and tax-defier rhetoric that have been universally rejected by this and other courts.  <u>See</u> <u>Arnstein v. Commissioner</u>, T.C. Memo. 1990-591, 1990 Tax Ct. Memo LEXIS 670, at *4-*5.  We perceive no need to

(continued...)

**[\*12]** demonstrate a good-faith attempt to respond.  We issued orders directing petitioner to respond to respondent's first request for admissions in accordance with Rule 90 and repeatedly warned petitioner that noncompliance may result in the imposition of sanctions under Rule 104(c).  Despite these warnings, petitioner failed to make any effort to demonstrate a good-faith attempt to respond to respondent's first request for admissions.  Therefore, all facts in respondent's first request for admissions are deemed admitted and incorporated herein by this reference.  See Rule 90(c).

2.  Discovery and Failure To Appear at Trial

On February 11, 2015, respondent filed a motion to impose sanctions, and, on February 13, 2015, filed a motion to dismiss for lack of prosecution.

Rule 123 provides, in pertinent part:

> **(a) Default:**  If any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, then such party may be held in default by the Court either on motion of another party or on the initiative of the Court.  Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate.
> \* \* \*

-----

[5](...continued)
refute petitioner's contentions "with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit."  Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984).

**[\*13]**      **(b) Dismissal:**  For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner.  The Court may, for similar reasons, decide against any party any issue as to which such party has the burden of proof, and such decision shall be treated as a dismissal for purposes of paragraphs (c) and (d) of this Rule.

Rule 123(b) generally applies to situations where the taxpayer bears the burden of proof.  On the other hand, a Rule 123(a) default would be the proper sanction as to those issues for which the Commissioner bears the burden of proof.  See Smith v. Commissioner, 926 F.2d 1470, 1476 (6th Cir. 1991), aff'g 91 T.C. 1049 (1988).

Dismissal of a case is a sanction resting in the discretion of the trial court.  Levy v. Commissioner, 87 T.C. 794, 803 (1986).  The Court may dismiss a case and enter a decision against the taxpayer for failure to properly prosecute or to comply with the Rules of this Court.  Rule 123(b); see also Basic Bible Church of Am. v. Commissioner, 86 T.C. 110, 112 (1986).  The failure to appear at trial and the failure to follow the provisions of our standing pretrial order are both grounds upon which we may dismiss for lack of prosecution.  See Gross v. Commissioner, T.C. Memo. 2008-218, 2008 Tax Ct. Memo LEXIS 214, at \*8.

Similarly, the failure to appear at trial is a ground for default, and the Court may enter a decision against the defaulting party.  See, e.g., Ritchie v.

[*14] <u>Commissioner</u>, 72 T.C. 126, 128-129 (1979); <u>Tucker v. Commissioner</u>, T.C. Memo. 2012-309, at *8. Entry of default has the effect of admitting all well-pleaded facts in the Commissioner's answer. <u>See</u> <u>Bosurgi v. Commissioner</u>, 87 T.C. 1403, 1409 (1986). A taxpayer's failure to appear at trial and failure to comply with the orders of the Court are proper bases for deeming the affirmative allegations in the answer to be true and entering a decision against the party in default. <u>See</u> <u>Smith v. Commissioner</u>, 91 T.C. at 1056-1057.

Petitioner has consistently demonstrated her refusal to participate in these proceedings by failing to properly respond to respondent's first request for admissions, not cooperating with respondent in the discovery process, not complying with our detailed orders or the standing pretrial order, and failing to appear at trial on February 9, 2015. By doing so, petitioner has failed to proceed as provided by our Rules and as required by this Court. Moreover, as previously discussed, petitioner's pleadings are replete with tax-protester rhetoric. The Court has shown leniency to petitioner by providing her ample opportunities to comply with the Rules of this Court and to cooperate with respondent in the discovery process. Furthermore, petitioner was warned numerous times that her failure to comply with our orders and the Rules of this Court may result in sanctions, including deeming certain facts as established for purposes of this case and

**[*15]** rendering a judgment by default. Under the circumstances of this case, petitioner's conduct constitutes a failure to properly prosecute and a default under Rule 123. Petitioner's failure to appear at trial and to comply with our Rules and the Court's specific orders warrants holding her in default under Rules 123 and 104. Accordingly, we will deem the affirmative allegations in respondent's answer true. See infra Appendix B.

## 3. Deficiencies

As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

The term "gross income" includes all income from whatever source derived, see sec. 61(a), and also includes "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion", Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Section 6012(a)(1)(A) requires that every individual having for the taxable year gross income which equals or exceeds the exemption amount, with certain exceptions not applicable in this matter, file an income tax return. Respondent determined that petitioner received

**[*16]** substantial gross income during the years in issue and failed to file Federal income tax returns.

Section 6001 requires taxpayers to keep books and records which are sufficient to establish their gross income, deductions, and credits and which allow the Commissioner to verify their correct tax liability. Sec. 1.6001-1(a), Income Tax Regs. Section 446(b) gives the Commissioner broad authority to reconstruct a taxpayer's income using any method that in the Commissioner's opinion clearly reflects income when the taxpayer fails to maintain adequate books and records. See also Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989). When the taxpayer fails to maintain or produce adequate records, the Internal Revenue Service (IRS) may reconstruct his or her income using an indirect method of proof. Choi v. Commissioner, 379 F.3d 638, 639-640 (9th Cir. 2004), aff'g T.C. Memo. 2002-183. The Commissioner's reconstruction of a taxpayer's income need "only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

Respondent reconstructed petitioner's income for the years in issue using the bank deposits method. The bank deposits method is a well-established and proper method of income reconstruction. See DiLeo v. Commissioner, 96 T.C. 858, 867-868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). The bank deposits method

[*17] assumes that all cash deposited into a taxpayer's bank accounts during a specific period is gross income, and it requires that the Commissioner take into account all nontaxable sources and deductible expenses that the Commissioner knows of to arrive at the taxpayer's taxable income. See Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986). Bank deposits are prima facie evidence of income, id. at 77, and the taxpayer has the burden of showing that the determination is incorrect, Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). A bank deposits analysis is not invalidated even if the Commissioner's calculations are not entirely correct. DiLeo v. Commissioner, 96 T.C. at 868.

Respondent determined using the bank deposits method that petitioner failed to report taxable income for the years in issue. Respondent supports this determination with the affirmative allegations in his answer which have been deemed true as a result of petitioner's default and the deemed admissions. The affirmative allegations in respondent's answer and the deemed admissions set forth in detail the facts upon which respondent determined petitioner's gross receipts for each year in issue and account for nontaxable sources to arrive at taxable income. Petitioner did not produce any evidence to refute respondent's bank deposits calculations. Therefore, on the basis of respondent's affirmative

[*18] allegations in his answer and the deemed admissions, we sustain respondent's determination as to petitioner's income tax deficiencies for all years in issue.

4. Additions to Tax

a. Section 6654

For all years in issue respondent determined that petitioner is liable for additions to tax for failure to pay estimated tax under section 6654. Section 6654(a) imposes an addition to tax on an underpayment of estimated income tax unless one of the exceptions in section 6654(e) applies. A taxpayer has an obligation to pay estimated tax only if she has a "required annual payment". Wheeler v. Commissioner, 127 T.C. 200, 212 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008). The required annual payment is equal to the lesser of: (1) 90% of the tax shown on the taxpayer's return for that year (or, if no return is filed, 90% of her tax for such year), see sec. 6654(d)(1)(B)(i), or (2) if the individual filed a return for the immediately preceding taxable year, 100% of the tax shown on that return, see sec. 6654(d)(1)(B)(ii). The addition to tax is mandatory regardless of extenuating circumstances or reasonable cause. See Dodge v. Commissioner, 96 T.C. 172, 183 (1991), aff'd in part, rev'd in part, 981 F.2d 350 (8th Cir. 1992); Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980).

**[*19]** Petitioner failed to file Federal income tax returns for the tax years in issue. Respondent's affirmative allegations in the answer, which have been deemed true, conclusively establish that petitioner failed to make estimated payments for the tax years in issue. Furthermore, the affirmative allegations state that "[p]etitioner did not file a return for taxable years 2003, 2004, 2005, 2006, 2007, 2008, or 2009" and that "[p]etitioner and * * * [her spouse] last filed a joint federal income tax return for the taxable year ended December 31, 1989." Petitioner did not offer any evidence that she paid estimated tax for any of the years in issue. Accordingly we sustain respondent's determination regarding the section 6654 addition to tax for each of the years in issue.

 b. Section 6651(a)(2)

 In his answer respondent asserted that petitioner is liable for additions to tax under section 6651(a)(2) for failure to timely pay the amount of tax shown on a return for each of the years in issue. Section 6651(a)(2) imposes an addition to tax unless the taxpayer establishes that the failure was due to reasonable cause and not due to willful neglect. The addition is calculated as 0.5% of the amount shown as tax on the return but not paid, with an additional 0.5% for each month or fraction thereof during which the failure to pay continues, up to a maximum of 25%. Id. Section 6651(a)(2) applies only when an amount of tax is shown on a return,

[*20] Cabirac v. Commissioner, 120 T.C. 163, 170 (2003), and the Commissioner has the burden of production to show an "amount shown as tax on * * * [a] return", sec. 6651(a)(2). A substitute for return made by the Secretary pursuant to section 6020(b) is treated as "the return filed by the taxpayer for purposes of determining the amount of the addition" under section 6651(a)(2). Sec. 6651(g)(2). The record shows that, on April 16, 2012, the IRS prepared substitutes for returns for the years in issue pursuant to section 6020(b). Furthermore, the unanswered admissions which we have deemed admitted establish that petitioner failed to pay any amounts of tax due for the years in issue. Therefore respondent has met his burden of production, and petitioner is liable for the addition to tax under section 6651(a)(2) for each of the years in issue.

    c.  Section 6651(f)

In the notice of deficiency respondent determined that petitioner is liable for an addition to tax under section 6651(f) for fraudulent failure to file a return for each of the years in issue. Section 6651(a)(1) imposes an addition to tax for failure to timely file a tax return unless the taxpayer can show that the failure is due to reasonable cause and not due to willful neglect. The addition equals 5% of the amount required to be shown as tax on the return for each month that the return is late, not to exceed 25%. Id. For purposes of section 6651(a)(1), the amount

**[\*21]** required to be shown on the return shall be reduced by (1) the amount of tax which is paid on or before the date prescribed for payment and (2) the amount of credit against the tax which may be claimed on the return. Sec. 6651(b)(1).

The addition to tax under section 6651(f) provides:

If any failure to file any return is fraudulent, paragraph (1) of subsection (a) shall be applied--

(1) by substituting "15 percent" for "5 percent" each place it appears, and

(2) by substituting "75 percent" for "25 percent".

Respondent must establish, by clear and convincing evidence, that petitioner underpaid her tax and that petitioner's failure to file was fraudulent. See sec. 7454(a); Rule 142(b); Clayton v. Commissioner, 102 T.C. 632, 646-653 (1994).

As previously explained, the underpayments of tax have been clearly established by the deemed admissions. To establish fraudulent intent the Commissioner must prove that a taxpayer intended to evade a tax known or believed to be owed by conduct intended to conceal, mislead, or prevent the collection of tax. Clayton v. Commissioner, 102 T.C. at 647.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record and the taxpayer's entire course of conduct. Petzoldt v. Commissioner, 92 T.C. at 699. We have held that deemed admissions

[*22] are sufficient to satisfy the Commissioner's burden of proof with respect to the issue of fraud. See Doncaster v. Commissioner, 77 T.C. 334, 336-338 (1981). In the case of a default, facts alleged by the Commissioner in the answer are deemed to be true, and judgment for the Commissioner is proper if those facts are sufficient to show that the taxpayer fraudulently failed to file tax returns for the years in issue. See Smith v. Commissioner, 91 T.C. at 1056-1057. With respect to the addition to tax under section 6651(f), the entry of a default judgment as a sanction under Rule 104(c)(3) has the effect of deeming admitted all of the Commissioner's factual and conclusory allegations relating to section 6651(f) that are set forth in the answer. Id. at 1056.

Courts have developed several objective "badges" of fraud, including: (1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) providing implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with taxing authorities; (7) engaging in illegal activities; (8) a pattern of behavior that indicates an intent to mislead; (9) dealing in cash; and (10) failure to make estimated tax payments. See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Clayton v. Commissioner, 102 T.C. at 647; Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). No single factor is necessarily sufficient to establish

**[*23]** fraud; however, a combination of several of these factors may be persuasive evidence of fraud. <u>Solomon v. Commissioner</u>, 732 F.2d 1459, 1461 (6th Cir. 1984), <u>aff'g</u> T.C. Memo. 1982-603.

Several "badges" of fraud are present in this case. First, petitioner engaged in a six-year pattern of failing to report substantial amounts of income. Second, petitioner and her spouse's various bank accounts show a steady flow of deposits, yet petitioner failed to provide records of these amounts. Third, petitioner did not file Federal income tax returns or make estimated tax payments for the years in issue. Finally, the affirmative allegations in the answer provide detailed facts supporting the finding of fraud, including the following:

> (kkk) Petitioner and Mr. Putnam's failure to maintain complete and accurate records of their income-producing activities and their failure to produce complete and accurate records to respondent in connection with the examination of petitioner and Mr. Putnam's income tax returns for the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, was fraudulent with intent to evade tax.

> (lll) Petitioner and Mr. Putnam fraudulently and with intent to evade tax refused to provide documents and answer respondent's agent's questions during the examination of their income tax returns for the taxable years 2004, 2005, 2006, 2007, 2008, and 2009.

> (mmm) Petitioner fraudulently and with intent to evade tax, failed to file her income tax returns for the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, and understated the amounts of income as follows:

**[*24]**

| | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|
| Unreported Inc. | $611,164 | $898,062 | $1,062,501 | $957,439 | $641,601 | $43,241 |

(nnn) Petitioner fraudulently and with intent to evade tax, failed to file her income tax liability on her 2004, 2005, 2006, 2007, 2008, and 2009 returns as follows:

| | 2004 | 2005 | 2006 |
|---|---|---|---|
| Total Correct Tax Liability | $222,027 | $328,652 | $389,425 |
| Less: tax shown on return or as previously adjusted | $0 | $0 | $0 |
| Understatement of tax | $222,027 | $328,652 | $389,425 |

| | 2007 | 2008 | 2009 |
|---|---|---|---|
| Total Correct Tax Liability | $350,067 | $232,234 | $9,916 |
| Less: tax shown on return or as previously adjusted | $0 | $0 | $0 |
| Understatement of tax | $350,067 | $232,234 | $9,916 |

(ooo) Petitioner's failure to file her tax returns for each of the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, is due to fraud.

For the foregoing reasons, we conclude that respondent has met his burden with respect to the additions to tax under section 6651(f) by relying on the deemed admissions and the affirmative allegations in the answer. Accordingly, we sustain respondent's determination of the addition to tax under section 6651(f) for fraud for each year in issue.

**[*25]** 5.  <u>Whipsaw</u>

Respondent issued separate notices of deficiency to both petitioner and her spouse (Mr. Putnam) based on substitutes for returns prepared under section 6020(b).  Mr. Putnam did not file a petition with this Court in response to his notice of deficiency, and respondent subsequently assessed the deficiencies against Mr. Putnam.  Because respondent was unable to obtain adequate information from petitioner as to whether the income at issue belongs to petitioner, Mr. Putnam, or both, respondent has determined to attribute the income to both petitioner and Mr. Putnam to the extent that the income could not specifically be attributable to either.  At trial on February 9, 2015, we directed respondent to file a memorandum of law on or before April 10, 2015, detailing the Government's "whipsaw"[6] position and explain what safeguards are in place to ensure that tax on the same income is not collected twice, from both petitioner and Mr. Putnam.

We begin by noting the functional importance of the Government's whipsaw position as it applies to the matter before us.  Although Mr. Putnam did

---

[6]"Whipsaw" is a situation where "there is one pool of income and two potential taxpayers, and the income might escape taxation altogether if Respondent were unsuccessful in pursuing only one taxpayer." <u>Fayeghi v. Commissioner</u>, 211 F.3d 504, 508 (9th Cir. 2000), <u>aff'g</u> T.C. Memo. 1998-297. By asserting inconsistent positions against petitioner and Mr. Putnam respondent can better facilitate the collection of the appropriate income tax deficiencies and additions to tax.

**[*26]** not file a petition in this Court, he is not precluded from paying the determined amounts and filing an administrative claim for refund with the IRS. See sec. 7422(a). Once the IRS acts upon the administrative refund claim (or after six months pass from the date of filing) Mr. Putnam can file a refund suit in the appropriate District Court or in the U.S. Court of Federal Claims. See sec. 6532(a). Thus, respondent's whipsaw position protects the public fisc in the event that Mr. Putnam prevails in a refund suit by establishing that the income at issue belongs to petitioner. In situations such as this the Commissioner is entitled to defend against inconsistent results by determining in separate notices of deficiency that two parties are liable for the same deficiency. Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 446 (1997); Powell v. Commissioner, 91 T.C. 673, 679 (1988), rev'd on other grounds, 891 F.2d 1167 (5th Cir. 1990).

On April 8, 2015, respondent filed a memorandum of law explaining that the IRS "has procedures in place that are specifically set forth in the Internal Revenue Manual to ensure that whipsaw assessments are only collected once." Internal Revenue Manual pt. 5.20.6.1.3(1) (Sept. 21, 2005) provides that "related case(s) should be controlled by a single revenue officer to monitor payments and prevent over-collection of the liability." If more than one revenue officer is assigned to the cases because of the localities of the taxpayers, the revenue

[*27] officers are to closely coordinate their collection efforts to ensure that the liability is collected only once. Id. Therefore, the IRS has safeguards in place to ensure that a whipsaw assessment against both petitioner and Mr. Putnam will not ultimately result in collecting tax from two separate individual taxpayers on the same income.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

An appropriate order and decision will be entered.

**[*28]**                    APPENDIX A

Respondent's Request for Admissions

1.  Petitioner did not file a federal income tax return for the following years:

        (a)  Taxable year 2003.
        (b)  Taxable year 2004.
        (c)  Taxable year 2005.
        (d)  Taxable year 2006.
        (e)  Taxable year 2007.
        (f)  Taxable year 2008.
        (g)  Taxable year 2009.

2.  Petitioner did not make any payments to respondent for taxes due for the following years:

        (a)  Taxable year 2004.
        (b)  Taxable year 2005.
        (c)  Taxable year 2006.
        (d)  Taxable year 2007.
        (e)  Taxable year 2008.
        (f)  Taxable year 2009.

3.  In 1978, petitioner married Mr. Denis Putnam ("Mr. Putnam").

4.  Petitioner and Mr. Putnam last filed a joint federal income tax return for the taxable year ended December 31, 1989.

5.  On June 7, 1994, Mr. Putnam caused to be filed with the State of Delaware, Secretary of State, Division of Corporations, a certificate of incorporation for a closely held corporation called Western Enterprises, Inc. ("Company").

6.  On August 20, 1994, Mr. Putnam opened a small business checking account under the name of the Company at Sandy Spring National Bank of Maryland ("Company Checking Account").

[*29] 7.  The Company Checking Account bank account number ends in the four digits of 54-01.

8.  On January 9, 1995, petitioner and Mr. Putnam obtained signature authority over the Company Checking Account.

9.  Petitioner is listed as the Assistant Treasurer on the signature card for the Company Checking Account.

10.  Since 1994 through the end of 2009, the Company Checking Account's signature card was not updated.

11.  During the years 2004, 2005, 2006, 2007, 2008, and 2009, petitioner and Mr. Putnam paid for personal expenses out of the Company Checking Account.

12.  The Company has never filed a federal income tax return.

13.  On January 27, 2005, the Company entered into a contract with Apex Systems Inc. as an independent contractor.

14.  During 2004, 2005, 2006, 2007, 2008, and 2009, Mr. Putnam and/or the Company received payments from various entities via check.

15.  The checks referred to in paragraph 14 above were made out to either Mr. Putnam or the Company.

16.  During 2004, 2005, 2006, 2007, 2008, and 2009, petitioner and Mr. Putnam maintained the following bank accounts:

(a) Company Checking Account.
(b) Bank account ending in 9569 at SunTrust Bank, held in the name of Denis & Ethel Putnam ("Joint Account").

17.  During 2004, Mr. Putnam also maintained a bank account ending in 6971 at M&T Bank ("Mr. Putnam's Account").

[*30] 18. Petitioner and Mr. Putnam made regular deposits of the checks referred to in paragraph 14 above into one or more of the Company Checking Account, the Joint Account, and Mr. Putnam's Account.

19. During 2004, petitioner and Mr. Putnam made bank deposits in the following amounts:

> (a) $611,164 into the Company Checking Account
> (b) $81,185 into the Joint Account
> (c) $62,086 into Mr. Putnam's Account

20. During 2005, petitioner and Mr. Putnam made bank deposits in the following amounts:

> (a) $898,062 into the Company Checking Account
> (b) $745 into the Joint Account

21. During 2006, petitioner and Mr. Putnam made bank deposits in the following amounts:

> (a) $1,062,501 into the Company Checking Account
> (b) $73,806 into the Joint Account

22. During 2007, petitioner and Mr. Putnam made bank deposits in the following amounts:

> (a) $957,439 into the Company Checking Account
> (b) $52,199 into the Joint Account

23. During 2008, petitioner and Mr. Putnam made bank deposits in the following amounts:

> (a) $597,711 into the Company Checking Account
> (b) $99,822 into the Joint Account

24. During 2009, petitioner and Mr. Putnam made bank deposits in the following amounts:

**[\*31]**          (a) $6,865 into the Company Checking Account
          (b) $41,301 into the Joint Account

25.  Petitioner did not receive any gifts, inheritances, legacies, or devises in the following years:

          (a)  Taxable year 2004.
          (b)  Taxable year 2005.
          (c)  Taxable year 2006.
          (d)  Taxable year 2007.
          (e)  Taxable year 2008.
          (f)  Taxable year 2009.

**[*32]**                                    APPENDIX B

Respondent's Answer (paragraphs 8-10)

8. FURTHER ANSWERING THE PETITION, and to assert the failure to pay addition to tax for taxable years 2004, 2005, 2006, 2007, 2008, and 2009, under I.R.C. § 6651(a)(2), in the amounts of $55,506.75, $82,163.00, $97,356.00, $87,516.75, $58,058.50, and $2,330.26, respectively, respondent alleges the following:

(a) Petitioner did not file a return for taxable years 2003, 2004, 2005, 2006, 2007, 2008, or 2009.

(b) On April 16, 2012, respondent prepared substitute for returns ("SFR") on behalf of petitioner.

(c) Petitioner did not make any payments to respondent for taxes due for taxable years 2004, 2005, 2006, 2007, 2008, or 2009.

9. FURTHER ANSWERING THE PETITION, and to assert the failure to make estimated payments addition to tax for taxable years 2004, 2005, 2006, 2007, 2008, and 2009, under I.R.C. § 6654, in the amounts of $6,362.65, $13,182.75, $18,429.15, $15,932.50, $7,463.21, and $237.39, respectively, respondent alleges the following:

(a) Petitioner did not file a return for taxable years 2003, 2004, 2005, 2006, 2007, 2008, or 2009.

(b) Petitioner did not make any payments to respondent for taxes due for taxable years 2004, 2005, 2006, 2007, 2008, or 2009.

10. FURTHER ANSWERING THE PETITION, and in support of the determination that petitioner's failure to file her tax returns for the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, is due to fraud, respondent alleges:

(a) In 1978, petitioner married Mr. Dennis Putnam ("Mr. Putnam").

**[\*33]**      (b) Petitioner and Mr. Putnam last filed a joint federal income tax return for the taxable year ended December 31, 1989.

(c) On June 7, 1994, Mr. Putnam caused to be filed with the State of Delaware, Secretary of State, Division of Corporations, through The Company Corporation, a certificate of incorporation for a close corporation called Western Enterprises, Inc. ("Company").

(d) On August 20, 1994, Mr. Putnam opened a small business checking account under the name of the Company at Sandy Spring National Bank of Maryland ("Company Checking Account").

(e) The Company Checking Account bank account number ends in the four digits of 54-01.

(f) On January 9, 1995, petitioner and Mr. Putnam obtained signature authority over the Company Checking Account.

(g) Mr. Putnam is listed as the Treasurer on the signature card for the Company Checking Account.

(h) Petitioner is listed as the Assistant Treasurer on the signature card for the Company Checking Account.

(i) Since 1994 to date, the Company Checking Account's signature card has not been updated.

(j) Petitioner and Mr. Putnam paid for personal expenses out of the Company Checking Account.

(k) The Company has never filed a federal income tax return.

(l) During 2004, Mr. Putnam worked for America Online ("AOL") as an employee.

(m) During 2004, Mr. Putnam's title at AOL was Principle Systems Programmer.

**[*34]** (n) Mr. Putnam ceased working for AOL as of October 29, 2004.

(o) On January 27, 2005, the Company entered into a contract with Apex Systems Inc. as an independent contractor.

(p) Mr. Putnam signed the contract as a "Contract Representative".

(q) Mr. Putnam agreed to the position of C/Perl Developer in the Contract.

(r) In 2005, Mr. Putnam represented himself as president of the Company.

(s) During the years at issue, Mr. Putnam and/or the Company received payments from various entities via check.

(t) Petitioner and Mr. Putnam made regular deposits of the checks into the Company Checking Account, a bank account held jointly between petitioner and Mr. Putnam, or (in 2004 only) a bank account held only in Mr. Putnam's name.

(u) The deposited checks were made out to either Mr. Putnam or the Company.

(v) Neither petitioner nor Mr. Putnam maintained, or submitted to respondent during respondent's examination, complete and adequate books and accounts of the income-producing activities for·each of the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, as required by the applicable provisions of the Internal Revenue Code (I.R.C.) and the regulations (Treas. Regs.) promulgated thereunder.

(w) Respondent is unable to determine whether the income deposited into petitioner and Mr. Putnam's joint bank account and the Company Checking Account belongs to petitioner or Mr. Putnam or both, and therefore has proposed to "whipsaw" the income to both to the extent that the income is not specifically attributable to either petitioner or Mr. Putnam.

**[\*35]**       (x) Respondent has determined petitioner's correct adjusted gross income for the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, on the basis of the bank deposits method.

      (y) During 2004, 2005, 2006, 2007, 2008, and 2009, petitioner and Mr. Putnam maintained the following bank accounts:

| | Bank | Name on Accnt | Accnt No. |
|---|---|---|---|
| (1) | Sand Spring Bank | Western Enterprises Inc. | *54-01 |
| (2) | M&T Bank/Provident | Dennis Putnam | *6971[1] |
| (3) | SunTrust Bank | Dennis & Ethal Putnam | *9569 |

      (z) During 2004, petitioner and Mr. Putnam made deposits in the banks accounts in subparagraph (y) above in the following amounts:

| | Accnt No. | Deposits |
|---|---|---|
| (1) | *54-01 | $611,164 |
| (2) | *6971 | $62,086 |
| (3) | *9569 | $81,185 |

      (aa) During 2004, petitioner and Mr. Putman made $754,435 of total deposits into all of their bank accounts.

      (bb) During the taxable year 2004, petitioner's reduction in total deposits for amounts attributable to nontaxable sources was as follows:

Nontaxable Source

| | |
|---|---|
| Transfers between accounts | $10,600 |
| Refinance | $38,779 |
| Misc. refunds/deposits | $2,135 |
| Mr. Putnam's net wages deposited | $91,757 |
| Reductions for nontaxable sources | $143,271 |

---

[1]  Account was closed in August 2004.

**[*36]** (cc) During the taxable year 2004, petitioner's net taxable deposits into petitioner and Mr. Putnam's bank accounts were as follows:

|  | 2004 |
|---|---|
| Total Bank Deposits | $754,435 |
| Less: reductions for nontaxable sources | $143,271 |
| Net Taxable Deposits | $611,164 |

(dd) Petitioner did not file a tax return for 2004.

(ee) The unreported adjusted gross income of petitioner for the taxable year 2004, as summarized from the allegations contained in subparagraphs (z) through (dd) of this paragraph, are as follows:

|  | 2004 |
|---|---|
| Total Bank Deposits | $754,435 |
| Less: Reductions for nontaxable items | $143,271 |
| Net taxable deposits | $611,164 |
| Less Gross Receipts as reported | $0.00 |
| Unreported Gross Receipts | $611,164 |

(ff) During 2005, petitioner and Mr. Putnam made deposits in the banks accounts in subparagraph (y) above in the following amounts:

|  | Accnt No. | Deposits |
|---|---|---|
| (1) | *54-01 | $898,062 |
| (2) | *9569 | $745 |

(gg) During 2005, petitioner and Mr. Putman made $898,807 of total deposits into all of their bank accounts.

(hh) During the taxable year 2005, petitioner's reduction in total deposits for amounts attributable to nontaxable sources was as follows:

[*37]                        Nontaxable Source

| | |
|---|---|
| Misc. refunds/deposits | $745 |
| Reductions for nontaxable sources | $745 |

(ii) During the taxable year 2005, petitioner's net taxable deposits into petitioner and Mr. Putnam's bank accounts were as follows:

| | 2005 |
|---|---|
| Total Bank Deposits | $898,062 |
| Less: reductions for nontaxable sources | $745 |
| Net Taxable Deposits | $898,062 |

(jj) Petitioner did not file a tax return for 2005.

(kk) The unreported adjusted gross income of petitioner for the taxable year 2005, as summarized from the allegations contained in subparagraphs (ff) through (jj) of this paragraph, are as follows:

| | 2005 |
|---|---|
| Total Bank Deposits | $898,062 |
| Less: Reductions for nontaxable items | $745 |
| Net taxable deposits | $898,062 |
| Less Gross Receipts as reported | $0.00 |
| Unreported Gross Receipts | $898,062 |

(ll) During 2006, petitioner and Mr. Putnam made deposits in the banks accounts in subparagraph (y) above in the following amounts:

| | Accnt No. | Deposits |
|---|---|---|
| (1) | *54-01 | $1,062,501 |
| (2) | *9569 | $73,806 |

**[*38]** (mm) During 2006, petitioner and Mr. Putman made $1,136,307 of total deposits into all of their bank accounts.

(nn) During the taxable year 2006, petitioner's reduction in total deposits for amounts attributable to nontaxable sources was as follows:

Nontaxable Source

| | |
|---|---|
| Transfers between accounts | $69,701 |
| Misc. refunds/deposits | $4,105 |
| Reductions for nontaxable sources | $73, 806 |

(oo) During the taxable year 2006, petitioner's net taxable deposits into petitioner and Mr. Putnam's bank accounts were as follows:

| | 2006 |
|---|---|
| Total Bank Deposits | $1,136,307 |
| Less: reductions for nontaxable sources | $73,806 |
| Net Taxable Deposits | $1,062,501 |

(pp) Petitioner did not file a tax return for 2006.

(qq) The unreported adjusted gross income of petitioner for the taxable year 2006, as summarized from the allegations contained in subparagraphs (11) through (pp) of this paragraph, are as follows:

| | 2006 |
|---|---|
| Total Bank Deposits | $1,136,307 |
| Less: Reductions for nontaxable items | $73,806 |
| Net taxable deposits | $1,062,501 |
| Less Gross Receipts as reported | $0.00 |
| Unreported Gross Receipts | $1,062,501 |

(rr) During 2007, petitioner and Mr. Putnam made deposits in the banks accounts in subparagraph (y) above in the following amounts:

**[*39]**

| | Accnt No. | Deposits |
|---|---|---|
| (1) | *54-01 | $957,439 |
| (2) | *9569 | $52,199 |

(ss) During 2007, petitioner and Mr. Putman made $1,009,638 of total deposits into all of their bank accounts.

(tt) During the taxable year 2007, petitioner's reduction in total deposits for amounts attributable to nontaxable sources was as follows:

Nontaxable Source

| | |
|---|---|
| Transfers between accounts | $50,014 |
| Misc. refunds/deposits | $2,185 |
| Reductions for nontaxable sources | $52,199 |

(uu) During the taxable year 2007 petitioners' net taxable deposits into petitioner and Mr. Putnam's bank accounts were as follows:

| | 2007 |
|---|---|
| Total Bank Deposits | $1,009,638 |
| Less: reductions for nontaxable sources | $52,199 |
| Net Taxable Deposits | $957,439 |

(vv) Petitioner did not file a tax return for 2007.

(ww) The unreported adjusted gross income for petitioner of the taxable year 2007, as summarized from the allegations contained in subparagraphs (rr) through (vv) of this paragraph, are as follows:

| | 2007 |
|---|---|
| Total Bank Deposits | $1,009,638 |
| Less: Reductions for nontaxable items | $52,199 |
| Net taxable deposits | 957,439 |

**[*40]**      <u>Less Gross Receipts as reported</u>                   <u>$0.00</u>
                           <u>Unreported Gross Receipts</u>                   <u>$957,439</u>

(xx) During 2008, petitioner and Mr. Putnam made deposits in the banks accounts in subparagraph (y) above in the following amounts:

|      | <u>Accnt No.</u> | <u>Deposits</u> |
|------|----------|----------|
| (1)  | *54-01   | $597,711 |
| (2)  | *9569    | $99,822  |

(yy) During 2008, petitioner and Mr. Putman made $697,533 of total deposits into all of their bank accounts.

(zz) During the taxable year 2008, petitioner's reduction in total deposits for amounts attributable to nontaxable sources was as follows:

<u>Nontaxable Source</u>

| | |
|---|---|
| Transfers between accounts | $52,122 |
| <u>Misc. refunds/deposits</u> | <u>$2,810</u> |
| <u>Reductions for nontaxable sources</u> | <u>$54,932</u> |

(aaa) During the taxable year 2008, petitioner's net taxable deposits into petitioner and Mr. Putnam's bank accounts were as follows:

|   | 2008 |
|---|------|
| Total Bank Deposits | $697,533 |
| Less: reductions for nontaxable sources | $54,932 |
| Net Taxable Deposits | $642,601 |

(bbb) Petitioner did not file a tax return for 2008.

(ccc) The unreported adjusted gross income of petitioner for the taxable year 2008, as summarized from the allegations contained in subparagraphs (xx) through (bbb) of this paragraph, are as follows:

**[*41]**                                                                 2008

| | |
|---|---|
| Total Bank Deposits | $697,533 |
| Less: Reductions for nontaxable items | $54,932 |
| Net taxable deposits | $642,601 |
| Less Gross Receipts as reported | $0.00 |
| Unreported Gross Receipts | $642,601 |

(ddd) During 2009, petitioner and Mr. Putnam made deposits in the banks accounts in subparagraph (y) above in the following amounts:

| | Accnt No. | Deposits |
|---|---|---|
| (1) | *54-01 | $6,865 |
| (2) | *9569 | $41,301 |

(eee) During 2009, petitioner and Mr. Putman made $48,166 of total deposits into all of their bank accounts.

(fff) During the taxable year 2009, petitioner's reduction in total deposits for amounts attributable to nontaxable sources was as follows:

Nontaxable Source

| | |
|---|---|
| Transfers between accounts | $4,905 |
| Misc. refunds/deposits | $20 |
| Reductions for nontaxable sources | $4,925 |

(ggg) During the taxable year 2009, petitioner's net taxable deposits into petitioner and Mr. Putnam's bank accounts were as follows:

| | 2009 |
|---|---|
| Total Bank Deposits | $48,166 |
| Less: reductions for nontaxable sources | $4,925 |
| Net Taxable Deposits | $43,241 |

**[*42]**        (hhh) Petitioner did not file a tax return for 2009.

(iii) The unreported adjusted gross income of petitioner of the taxable years 2009 as summarized from the allegations contained in subparagraphs (ddd) through (hhh) of this paragraph are as follows:

|  | 2009 |
|---|---|
| Total Bank Deposits | $48,166 |
| Less: Reductions for nontaxable items | $4,925 |
| Net taxable deposits | $43,241 |
| Less Gross Receipts as reported | $0.00 |
| Unreported Gross Receipts | $43,241 |

(jjj) Petitioner, during the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, did not receive any gifts, inheritances, legacies, or devises.

(kkk) Petitioner and Mr. Putnam's failure to maintain complete and accurate records of their income-producing activities and their failure to produce complete and accurate records to respondent in connection with the examination of petitioner and Mr. Putnam's income tax returns for the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, was fraudulent with intent to evade tax.

(lll) Petitioner and Mr. Putnam fraudulently and with intent to evade tax refused to provide documents and answer respondent's agent's questions during the examination of their income tax returns for the taxable years 2004, 2005, 2006, 2007, 2008, and 2009.

(mmm) Petitioner fraudulently and with intent to evade tax, failed to file her income tax returns for the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, and understated the amounts of income as follows:

|  | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|---|---|
| Unreported Inc. | $611,164 | $898,062 | $1,062,501 | $957,439 | $641,601 | $43,241 |

**[*43]**      (nnn) Petitioner fraudulently and with intent to evade tax, failed to file her income tax liability on her 2004, 2005, 2006, 2007, 2008, and 2009 returns as follows:

|                                | 2004      | 2005      | 2006      |
|--------------------------------|-----------|-----------|-----------|
| Total Correct Tax Liability    | $222,027  | $328,652  | $389,425  |
| Less: tax shown on return or as previously adjusted | $0 | $0 | $0 |
| Understatement of tax          | $222,027  | $328,652  | $389,425  |

|                                | 2007      | 2008      | 2009      |
|--------------------------------|-----------|-----------|-----------|
| Total Correct Tax Liability    | $350,067  | $232,234  | $9,916    |
| Less: tax shown on return or as previously adjusted | $0 | $0 | $0 |
| Understatement of tax          | $350,067  | $232,234  | $9,916    |

(ooo) Petitioner's failure to file her tax returns for each of the taxable years 2004, 2005, 2006, 2007, 2008, and 2009, is due to fraud.